## Dagit's Estate

Before Lamorelle, P. J., and Gest, Henderson, Van Dusen, Stearne, and Sinkler, JJ.

132

[redacted]

*Townsend, Elliott & Munson,* for exceptants; *Robert M. Green,* contra.

HENDERSON, J., June 22, 1934.—By the residuary clause of his will, the testator gave one sixth in trust for his daughter Louise M. upon the same terms as the gift to her in the third clause of the will.

By the latter clause he provided, "in default of her leaving child or children [and she left none], the same shall then go to my surviving child or children, share and share alike and the issue of any deceased child, said issue to take their parent's share."

Other than Louise M., the testator left five children. Mary L. Weed and Leon E. Dagit survive; Victorine E. Adams predeceased the life tenant, leaving two children; Henry S. Dagit predeceased the life tenant, leaving six children; and Frederick F. Dagit also predeceased the life tenant without issue.

The question for determination is, did these remainders vest at the death of the testator or at the death of the life tenant? The usual rule calls for vesting at the death of the testator. See Ross v. Drake, 37 Pa. 373. If this rule is followed, the fund would be divided into five parts.

If, however, the remainders are held to be contingent, Frederick F. having predeceased the life tenant without issue, his share would drop out, and the fund would be divisible into fourths.

The reason for the general rule and the exception thereto is stated by Judge Gest in Alburger's Estate, 30 Dist. R. 301, 304. In that case, the testator gave the residue of his estate in trust to pay the income to his wife and upon her death "to divide the principal . . . to and among my surviving brothers and sisters and the issue of such of my brothers and sisters as may be deceased" per stirpes. In holding the remainders contingent, he said:

". . . it was argued that the bequest to surviving brothers and sisters denoted those surviving at the death of the testator, and this is undoubtedly the general rule which has been adopted by our courts. . . . The principal reason as given in Ross v. Drake, 37 Pa. 373, and Sterling's Estate, 7 Pa. C. C. Reps. 223, is based upon the presumption that the testator did not intend to exclude from participation in the remainder those persons who might claim through a deceased member of the class. But where the testator has himself provided a substitutionary gift to those who might otherwise be excluded, there is no necessity for presuming such intention in favor of vesting at his death, and the will itself, according to a natural interpretation, points to a contingency that is resolved at the death of the life-tenant. The auditing judge so expressed the views of this court in delivering the opinion in Bentley's Estate, No. 2, 30 Dist. R. 69, where the direction was that the bequest over in remainder should be equally divided 'between my surviving children, their heirs, executors, administrators and assigns.' In Woelpper's Appeal, 126 Pa. 562, the remainders were in favor of 'the surviving brothers and sisters and the lawful issue of such as may be dead (if any),' so that the Supreme Court held that the death of the life-tenant was the period of vesting and excluded from participation the estate of a son who died without issue before the life-tenant. Patrick's Estate, 162 Pa. 175, and Fox's Estate, 222 Pa. 108, are to the same effect; also Reiff's Appeal, 124 Pa. 145, and Adams's Estate, 208 Pa. 500, and the construction that the remainders are contingent is greatly strengthened by the addition of the words 'such issue are to take only the share that their deceased parent would have taken if living.' "

This was affirmed in 274 Pa. 15.

In Woelpper's Appeal, 126 Pa. 562, 572, Mr. Justice Mitchell remarked, as to the general and somewhat artificial rule of construction:

"Is there any such rule settled in the sense that it must be unbendingly applied to all cases? Has any phrase or description of persons acquired a set and absolute meaning, that must be conclusively presumed and adhered to, without regard to the context, or the circumstances, or the actual intent of the testator? If so, it is a clear perversion of fundamental principles, and the grounds for maintaining it should be strong indeed. . . .

"With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid, not to override it. As in all such

cases, care is required that tools shall not become fetters, and that the real end shall not be sacrificed to what was intended only as the means of reaching it."

These rules of construction were further elucidated by Judge Gest in Jones's Estate, 7 D. & C. 335, 337:

"The argument on the other side, presented by Judge Jenkins, is founded on the general rule adopted in this State that words of survivorship refer to the period of the testator's death, as laid down in Johnson v. Morton, 10 Pa. 245; Ross v. Drake, 37 Pa. 373, and many other cases. The soundness of the general rule may be conceded, but *cessante ratione legis cessat ipsa lex*. The principal consideration, which has induced our courts to adopt the rule of the earlier English cases in preference to that enunciated by Vice-Chancellor Leach in Cripps v. Wolcott, 4 Mad. 11, was, as stated by Justice Strong in Ross v. Drake, 37 Pa. 373, and by Judge Penrose in Sterling's Estate, 7 Pa. C. C. Reps. 223, the presumption that the testator did not intend to exclude from participation in the remainder those persons who might claim through a deceased member of the class; and, further, in case there should be no living members of the class at the time of distribution, to prevent an intestacy. But where the testator has himself provided a substitutionary gift to those who might otherwise be excluded, there is no necessity for presuming such intention in favor of vesting at his death, for the will itself points to a contingency that is resolved at the death of the life-tenant. This is the *ratio decidendi* of Woelpper's Appeal, 126 Pa. 562, for there the remainders were differently expressed, being in favor of 'the surviving brothers and sisters and the lawful issue of such as may be dead (if any),' so that the Supreme Court held that the death of the life-tenant was the period of vesting, and, therefore, excluded from participation the estate of a son who died without issue before the life-tenant. The court, in its opinion, in commenting upon Johnson v. Morton, 10 Pa. 245, and Ross v. Drake, 37 Pa. 373, observed that in neither of them was any provision made for the issue of any child of the testator who might die pending the life estate, so that the rule of construction was enforced in those cases in order to preserve the rights of the issue of children intermediate between the death of the testator and the time of distribution."

Applying these canons of construction to the language of the instant will, we find the rule of vesting as of the date of the death of the testator should not be adopted, because it is not necessary to prevent an intestacy, and it is not required to protect the issue of a child predeceasing the life tenant in that the issue of a deceased child is substituted—"said issue to take the parent's share".

This latter clause cannot refer to the issue of a child predeceasing the testator because such issue would be substituted by the Act of April 8, 1833, P. L. 315, reënacted in section 15(a) of the Wills Act of 1917.

This clause, substituting the issue of such children as predeceased the life tenant, shows conclusively the contingent nature of the gift.

We come now to the application of this clause to the surrounding facts: Two of the children survived the life tenant, and they will each take a share; two predeceased, and their children will be substituted per stirpes; Frederick F. predeceased the life tenant without issue; hence the contingent gift to him failed and as he left no issue there is no substitution. The fund will accordingly be divided into four parts.

Handy's Estate, 18 D. & C. 728, affirmed in 314 Pa. 61, is to be distinguished from the instant case. Therein the language of the will provided that, after the death of the life tenant, the gift was "to hold the same for my surviving children as if the same had formed part of their original shares." If any of the children had predeceased the life tenant leaving issue, there was no substitutionary bequest to the issue as in the instant will, and hence the general rule vesting

the shares as of the date of the death of the testator was applied, so as to protect such issue.

Under the instant will, there is a substitutionary gift to the issue of such children as predeceased the life tenant, hence its contingent character is vindicated.

The adjudication will be amended as herein set out, and as amended is confirmed absolutely.

SINKLER, J., dissents.