## Loving's Estate

458

*Maurice J. Friedman* and *John J. Mitchell, Jr.*, for exceptants.

*Benjamin H. Levintow*, contra.

BOLGER, J., November 30, 1945.—Although this case may come within the "pay and divide" class, we are all convinced that the court decisions in that field afford no real assistance in ascertaining this testator's intention; the authorities on that subject are in hopeless confusion and their conclusions are uniformly based upon the order or form of words, which we find of little value here.

The applicable general rule stated in the adjudication is that "survivorship" or "survivor" is to be construed as meaning the death of the testator and therefore characterizes the estate given as vested. After so stating and citing the supporting cases, the auditing

judge points out that the principle is not unbending, and gives several illustrations of exceptions to it as contained in the cases he enumerates, which can be called the "heirs and survivor" cases. The auditing judge then proceeds to find an analogy in the testator's use of the word "survivor" in the gifts of income to named grandchildren for life (or "to the survivor of them"), and of principal to his sister and his niece ("or the survivor of them"), that since the former refers the gift of income to the date of the death of the life tenant that therefore the same term must be so construed when used in the gift of principal. The auditing judge states:

"I cannot believe in such repeated use of this word that he intended two periods of survivorship. Consistently, he must have meant to give only to living persons and not to the estates of the dead. He intended to refer survivorship to the time of distribution of both principal and income."

In support thereof, he cites Sternbergh's Estate, 250 Pa. 167.

In Rickenbach Estate, 348 Pa. 121, the well-known principle is stated that the intention of the testator should be our guiding principle in the solution of this type of case, and that in our search for it, we should give more weight to matters of substance than to those of form. Let us first examine the will and if possible ascertain its meaning without reference to canons of construction: Blair et al. v. Shannon et al., 349 Pa. 550, 555, citing Groninger's Estate, 268 Pa. 184.

This testator's testamentary general scheme comprehended five persons, all of whom survived him. He included them all in his will in order of preference: to his wife, he gave a life estate; thereafter, life estates to his two grandchildren, with remainder to his sister and his niece (his sister's daughter). The only other gift is of a mortgage of $2,500 to John Riddell. It is

probable that he did not comprehend the passing of his estate to persons beyond those then living. But there are two most important and arresting facts about his will which constitute substantial considerations in determining his intention. One is negative and the other positive. Negatively, *he failed to go beyond grandchildren* in his gifts to lineals, but in lieu thereof, he proceeded positively forthwith to give principal to his sister and his niece. Why did he stop with grandchildren? He could readily have included great-grandchildren if he had wanted them to share in his estate. His failure to do so must be regarded as an inferential disinheritance of them. The adjudication, therefore, is subject to exception on the ground that it is a defeat of this implied term of the will.

The gift to the testator's sister and his niece is expressed. It is true it follows in sequence the life estate to the grandchildren and from that fact it might be argued that the testator intended the gift to vest only in the event that either one or both survived the grandchildren. This argument, however, presupposes that the testator knew that in order for them to take, his sister and her daughter would have to outlive the grandchildren, members of a generation twice removed from the former and once from the latter. The probability of this happening was so remote as to be absurd. In either case, it would have been ridiculous for him to make such a gift; therefore to hold the gift contingent would render the phrase meaningless, a cruel jest to persons to whom he admittedly was greatly attached. We do not think he intended any such result. On the contrary, we firmly believe he intended to make a substantial gift to them. It would be more natural and logical to believe that instead the testator intended his sister and her daughter to share in the estate irrespective of their outliving the grandchildren, which, in legal terminology, would mean that he intended to give them

a vested interest, which would result in their estates representing their shares if they did not survive. To hold that they take nothing amounts to expunging from the will not merely a word, but a whole phrase, with which result we are not in accord. This view is a far better answer to the problem of why the testator did not proceed further in benefiting his lineals, than that contained in the adjudication.

These outstanding factors call into play maxims of construction which are not based upon matters of form, but are all of substance and which serve to support exceptants' case. We start with the general rule stated in the line of cases of which Carstensen's Estate, 196 Pa. 325, is a leading one:

"All remainder interests are deemed to be vested as of the date of death of the testator unless there are plain words in the will or the necessary implication can be drawn therefrom that the testator intended otherwise."

Next is the presumption upheld in Duffy's Estate, 313 Pa. 101, that a testator intends to dispose of his entire estate and not die intestate as to any part of it. In Hannach's Estate, 332 Pa. 145, a construction which gives effect to all parts of the will and rejects no language as surplusage is to be preferred. Intestacy is to be avoided in all possible cases. Duffy's Estate (supra) also holds that a construction which will satisfy the language used without leading to absurd or inconvenient results is to be preferred, still more so if the opposite construction will defeat the will altogether, and divert the bounty of the testator from those whom he manifestly intended to benefit and give it to persons whom he thought he had already sufficiently provided for. This principle is applicable because the last phrase can be extended to read, "or whom he apparently intended to disinherit". In Greenawalt's Estate, 343 Pa. 413, and Calder's Estate, 343 Pa. 30, that construction is favored which will render

every word operative rather than one which makes some words idle and nugatory. In Blair et al. v. Shannon et al. (supra), a testator will not be presumed to have used language not intended to be effective. In Irwin's Estate, 304 Pa. 200, we can attribute no intention to a testator of writing meaningless words in his will when another construction gives such words intelligent and proper meaning. Finally, the presumption that an heir is not to be disinherited except as the result of expressed words or necessary implication is no greater than the presumption that the testator did not intend to die intestate as to any part of his estate: French's Estate, 292 Pa. 37. Furthermore, as hereinbefore stated, the testator's pointed failure to provide for great-grandchildren must be regarded as a necessary implication of disinheritance of them.

I can find no indication in the gift of income for life to the grandchildren that the word "survivor" was intended by the testator to be used as a word of limitation, or designation of the character of the gift. Life estates can be vested or contingent, but insofar as the blossoming of either type into possession, they can be regarded as similar. I believe that they were so regarded by this testator. He was probably unfamiliar with the nicety of legal distinction between them. His language, without the use of "survivor" indicates that one or both of them to enjoy, must survive him and the widow, because they could not share it with her; their gift succeeds her life estate. But no such intention appears in the gift of principal and, therefore, the attempted analogy between the language of the two clauses characterizing them as contingent falls. The essential point is that testator wanted his sister and his niece to benefit, irrespective of how or when such benefit came to them. Emphasis is added to this conclusion by comparing the language of the gift of the $2,500 mortgage with that contained in the dis-

puted gift in remainder of the residuary estate. The former clause reads, "Immediately after the death of my wife I give and bequeath . . ."; the latter phrase likewise reads, "and immediately after the death of the last or survivor of my grandchildren . . ." The former gift is definitely vested, which, of course, means that the testator intended that, even though Riddell did not survive "my wife", that his estate would take it. It naturally follows, from the identical language of the two gifts from the standpoint of the time at which they should vest, testator intended the legatees to take, irrespective of the time of enjoyment.

On the other hand, a more reasonable view of testator's use of "survivor" in the gift to the grandchildren was to measure the quantum of the estate that the survivor of them should take when one predeceased the other, whether in the lifetime of the testator, of the widow, or during their enjoyment of the estate, a sort of substitutionary limitation. He knew one would naturally die before the other and he provided accordingly. If both should survive the testator and the widow, both would share equally. Should one die whether before or after the widow, the survivor would take all, including the share of the deceased grandchildren, thereby precluding all possibility of an intestacy as to the share of the deceased one, a question that oftentimes results when testators fail to provide gifts over upon the death of one of two life tenants. See French's Estate, 292 Pa. 37; Grothe's Estate, 229 Pa. 186; Bailey's Estate, 52 D. & C. 297, and Knox's Est. (no. 2), 328 Pa. 188. This meaning is natural and plausible. It is more than sufficient to raise the degree of doubt referred to in Ross v. Drake, 37 Pa. 373, cited in the adjudication, which doubt requires the application of the rule of vesting. Therefore, the auditing judge's reason for departing from the general rule disappears and the latter must be applied to the gift in remainder.

The instant case is readily distinguished from Stern-bergh's Estate, supra. There the gifts over were indispensably held to be contingent unless the whole scheme of testator's distribution were to fall. The question was the nature of gifts to "surviving children" when the youngest son attained the age of 25 years. As the court said (p. 170) :

" 'If we hold that the testator meant the youngest of "surviving sons" who should survive him, we would have the anomaly that the youngest son who survived him might die before the age of twenty-five years, and although the other surviving sons may have attained a greater age, they would have taken nothing.' "

Here the testator's testamentary scheme would not only not be thwarted by holding the gift to be vested, but the testamentary scheme is more consistent with that result and makes a natural and logical disposition.

We prefer the authority of Eichelberger's Estate, 274 Pa. 576, where the testatrix gave a life estate to her brother and then directed the payment of a share of principal to her sister "or her surviving children". It was there held (p. 582) that the more reasonable meaning of "or in case of her death", was the children who survived her rather than the alternative interpretation "or, in case of her death (before the life tenant, the income collected after his death shall be paid) to her surviving children (i. e., those who survived the life tenant)". The court said that the latter construction necessitated "too much of an ellipsis to be supplied". A similar excessive straining of construction would result were we to paraphrase the gift in remainder to read "divided between my sister, Margaret Johnson, and my niece, Anna E. Nickless, or the survivor of them (i. e., if one or both of them survive my grandchildren)", which is what the adjudication requires.

At the request of the auditing judge we note an error in his award of an intestate share of rents to the representatives of the widow. Under the intestate laws in force prior to 1917, her interest, if any, in real estate ceased at her death in favor of the grandchildren. All awards to the widow being eliminated by this opinion, this correction is noted only for the sake of the record.

The exceptions are sustained and the adjudication modified accordingly.

---

LADNER, J., dissenting, November 30, 1945.—I dissent from the majority opinion and agree with the auditing judge's construction of the will for the reasons well stated in his adjudication, which I need not repeat. I merely add that the presumption against the contingency of a legacy is not nearly as strong where the gift is to collaterals as when made to lineals: Weir's Estate, 307 Pa. 461, and cases therein cited at p. 469. Nor is the presumption against partial intestacy any stronger than the presumption against the intention to disinherit the natural heirs, and where these presumptions conflict, the will should be interpreted without regard to either of these presumptions: French's Estate, 292 Pa. 37, at p. 41.

I cannot believe that this testator intended to prefer his collaterals to his descendants. It is more natural to suppose that the provision for the collaterals was intended to take effect only if by the happening of some unforeseen circumstances his grandchildren both died before his sister and niece. However improbable this might have been, it was not impossible. So far as failure to provide for great-grandchildren is concerned, the will is merely a familiar example of the failure of the testator's mind to run that far. From the date of the will it would seem that the grandchildren at that time were of tender years and great-grandchildren unborn. I would dismiss the exceptions. Judge Hunter joins in this dissent.