## Edelman's Estate.

*Wills — Construction — Rules of construction—Vested and contingent interests—Postponing distribution, etc.—Disinheriting heir —Death in testator's lifetime—Survivorship.*

1. The law favors the construction of a will which makes for a vested rather than a contingent estate.

2. A construction which causes an heir to be disinherited or which works an invidious distinction between the heirs is to be avoided, if possible.

3. Words of survivorship in a will refer to the death of the testator, subject to the cardinal rule that the actual intent of the testator must prevail.

4. Though there is no other gift than the direction to pay or distribute in the future, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting of the remainders will not be deferred till the period in question.

5. Where a testatrix places her residuary estate in trust during her husband's life to pay the income in equal shares of one-fourth each to him, to a daughter, to a son, and to the children of a deceased son, and upon the death of the husband the estate is to be divided one-third to the daughter, one-third to the son, and one-third to the children of the deceased son, and it is directed that in

case of the death of the daughter, her share shall go to her children, and in case of the death of the son, his share shall go to his child, the testatrix contemplated the death of the son and daughter in her lifetime; if they survived their mother they took vested estates in remainder in her estate.

Argued January 29, 1923. Appeals, Nos. 29, 34, 187-191, by Annie S. Edelmen, guardian of Richard C. Reiff et al., from decree of O. C. Montgomery Co., June T., 1921, No. 48, dismissing exceptions to adjudication, in estate of Amelia R. Edelman, deceased. Before MOSCH-ZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication. Before SOLLY, P. J.
The opinion of the Supreme Court states the facts.
Exceptions dismissed. Annie S. Edelman, guardian, et al., appealed.

*Error assigned,* inter alia, was decree, quoting it.

*William I. Stanton* and *W. W. Porter,* with them *Jesse R. Evans, Henry I. Fox* and *Joseph Savidge,* for appellants.—Raymond Edelman had a one-third interest in the residuary estate of his mother contingent on his surviving his father or at most a vested interest therein which was divested by reason of his death in his father's lifetime: Caldwell v. Skilton, 13 Pa. 152; Sharpless' Est., 209 Pa. 409; McAlpin's Est., 211 Pa. 26.

*Horace Paul Dorman,* for appellee, cited: Budd's Est., 2 Pa. Dist. R. 148; Frechie's Est., 62 Pa. Superior Ct. 48; Sheetz's App., 82 Pa. 213; Lipman's App., 30 Pa. 180; Eichelberger's Est., 274 Pa. 576; Groninger's Est., 268 Pa. 184; Lehman v. Lehman, 29 Pa. Superior Ct. 60; Lehman v. Lehman, 215 Pa. 344; Smith's Est., 189 Pa. 587; Letchworth's App., 30 Pa. 175; Grim's App., 89 Pa. 333; McClure's App., 72 Pa. 414; Little's App., 117 Pa. 14.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, February 26, 1923:

Amelia R. Edelman died March 22, 1906, leaving a will dated September 22, 1900, with several codicils made thereafter; all of which were probated, and letters testamentary granted to the Security Company of Pottstown, on June 4, 1906.

The testatrix was survived by her husband, William Edelman; a daughter, Adele E. Reilly; a son, Raymond Edelman; and five children of Albert J. Edelman, a deceased son. Raymond Edelman died November 12, 1915, willing his estate to his widow, Louie Fellman Edelman, whom he appointed executrix; this son had a daughter, Mary Amelia Edelman, who died December 3, 1916, leaving an illegitimate son, Richard C. Reiff. William Edelman, the husband of testatrix, died March 24, 1920. Adele E. Reilly, the daughter, and the five children of Albert J. Edelman are all alive and of full age.

The court below held that Raymond Edelman died seized of a vested one-third interest in his mother's estate, and that this passed under his will; it made an award accordingly. The several appeals which have been filed will be disposed of together in this opinion.

The proper distribution of the fund before the court (consisting of the proceeds of real estate) depends on the construction of Amelia R. Edelman's will and codicils; when she executed these, the husband, daughter, son Raymond, and five children of the deceased son Albert, constituted testatrix's family; they were the chief objects of her bounty. Her testamentary dispositions evidence a desire, first, to give the husband an ample income for life, and, next, to give the estate in general to her two children and the children of her deceased son, Albert, in three equal parts as nearly as possible. This desire for equality between the three is shown, first, by numerous small bequests of jewelry, wearing apparel, furniture, books, shares of stock, etc., to her several children and the children of her deceased son, and, finally,

by the distribution of her residuary estate with which we are here concerned.

She placed the residuary estate in trust during the life of her husband to pay the net income in equal shares of one-fourth each, to him, the daughter, the son, and the children of her deceased son, adding a provision that, if the income should be insufficient for the comfortable support of her surviving spouse, his share should be increased and each of the other shares proportionately reduced. Immediately upon the death of the husband, the trustees are directed to "divide" the estate, one-third to the daughter, one-third to the son, and the remaining third to the children of Albert. The last item of the will provides that, in case of the death of Adele, her share shall be given to her two children, or the survivor of them, and in case of the death of Raymond, his share shall revert to the estate of testatrix. The latter provision is changed, in the second codicil, and Raymond's one-third portion of the estate, in case of his death, is given to his daughter, Mary Amelia Edelman.

The court below, in a painstaking and learned opinion, held that "when the testatrix referred to the death of her daughter, Adele, and her son, Raymond......she meant the death of either in her (testatrix's) lifetime." This conclusion, and the distribution, founded on it, of Raymond's share to the executrix of his estate, are complained of by appellants, who contend that the share of Raymond either belongs to the son of his deceased daughter or that it should be distributed as though the testatrix had died intestate as to that one-third of her residuary estate.

The auditing judge, speaking for the court below, states its view of the will, and the guiding rules of law, thus: "The testatrix had in mind......that her daughter or her son, or both, might die before her, and she accordingly provided for such event......by expressly naming substitutionaries. The conclusion is irresistible that the daughter, son and grandchildren [children of

Albert], all having survived the testatrix, took vested interests in the residue of the estate, the enjoyment of their shares of the corpus being postponed until the death of the husband......Though there be no other gift than the direction to pay or distribute in the future [here to divide the residuary estate of testatrix at the death of her husband], yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest [here the special interest of the husband], the vesting [of the remainders] will not be deferred till the period in question [Groninger's Est., 268 Pa. 184, 191].

......It is argued that the provisions in the will, and the last codicil, that, in case of the death of Raymond, his one-third of the estate should go to his daughter, Mary Amelia, and in case of the death of Adele, her share should go to her two children or the survivor of them, show the testatrix intended that Raymond and Adele were to survive their father. That construction we cannot adopt. It is a general canon of construction [see Murphey's Estate, the next preceding case] that words of survivorship in a will refer to the death of the testator [but, of course, this is subject to the] cardinal rule that the actual intent of the testator must prevail, where it can be ascertained, and it follows that words of survivorship will relate to the death of the life tenant instead of the death of the testator if such intent is clear from the will itself......: Morris's Est., 270 Pa. 120. Here, it seems clear that it was not the intention of the testatrix that her son, daughter, or grandchildren should have shares of the estate only if they survived the husband. If she so intended there would have been a direction that the residuary estate should be divided among them if they survived the husband, otherwise to substitutionaries. We accordingly hold that the interest of the daughter, son, and the children of Albert, all of them having survived the testatrix, vested in them at her death, by way of remainder, one-third in Adele,

one-third in Raymond, and one-third in the five children of the deceased son, Albert."

The above excerpts from the opinion of the auditing judge correctly disposed of the case. We need add only that no reason was disclosed to warrant a finding, or belief, that testatrix desired to take Raymond's share from him, if he happened to die during the life of his father; a construction which causes an heir to be disinherited, or which works an invidious distinction between the heirs, is to be avoided where possible, and, of course, the law always inclines to a construction which makes for a vested rather than a contingent estate.

The decree is affirmed at cost of appellants.