## Knowles's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

The facts appear from the adjudication of

HENDERSON, J., Auditing Judge.—The trust in this estate arose under the will of William B. Knowles, who died September 22, 1875.

By his will the testator provided as follows:

"Item. After the payment of my just debts, I give, devise and bequeath all my estate, real personal and mixed, (except a policy of Insurance on my life for five thousand dollars, in the New England Mutual Life Insurance Company which I have given to my Wife Annie Read Knowles,) to Levi Knowles and Charles P. Perot and the survivor of them in trust nevertheless to pay over the net rents, profits and income of same to my wife Annie Read Knowles for and during the term of her natural life for the support of herself and our children, and immediately upon her death in trust to pay and deliver over the principal of my said estate to our children in equal shares, each child to take his or her pro-rata share of my said estate absolutely.

"Item. In the event of my said Wife dying leaving none of our children living at her decease and no issue of any such children, then I give and bequeath the sum of one thousand dollars to the Trustees of the Baptist Home Seventeenth and Norris Streets Philadelphia, in trust to invest the same and pay over the income thereof towards the support of the said institution.

"Item. In the event of my Wife dying without such children or issue of such children, then the whole of my estate after payment of the said sum of one thousand dollars to the said Trustees of the Baptist Home, I give and bequeath in equal shares to my Father Levi Knowles, my Mother Elisabeth A. Knowles and my two Sisters, Mary Knowles Perot Wife of Charles P. Perot, and Fannie Knowles, share and share alike. If my Sisters or either of them should die before the vesting of the foregoing devise in them leaving issue then I give the share or shares of my said sister or sisters so deceased to her or their issue, and if either of my said sisters should die without issue before the vesting of the said devise, then I give the share of such sister to her heirs at law."

The testator was survived by his widow, Annie Read Knowles, two children, William B. Knowles, Jr., and Cecelia Buck, his father, Levi Knowles, and his mother, Elisabeth A. Knowles, and his two sisters, Mary Knowles Perot and Fannie Knowles Atwood.

The widow died November 27, 1931, when the trust terminated.

The son of the decedent died January 5, 1878, and the daughter September 3, 1919; neither had had any issue.

The sister, Mary Knowles Perot, died October 14, 1916, survived by a daughter, Laetitia Perot Whiting, and by two grandsons, William Hannis Perot and Charles P. Perot, the children of a deceased son, L. Knowles Perot.

The sister, Fannie Knowles Atwood, died March 13, 1886, intestate and without issue, survived by her husband, J. Ward Atwood, who died February 23, 1888, by her parents, Levi and Elisabeth A. Knowles, her sister, Mary Knowles

Perot, and her niece, Cecelia Buck. Levi Knowles dies January 18, 1898, and Elisabeth on June 27, 1905.

The children are eliminated by the gift over in the event of the wife dying "leaving none of our children living at her decease and no issue of any such children." In such event, "then the whole of my estate . . . I give and bequeath in equal shares to my Father Levi Knowles, my Mother Elisabeth A. Knowles, and my two Sisters Mary Knowles Perot . . . and Fannie Knowles, share and share alike." These four survived the decedent and this language standing alone would be sufficient to vest a one-quarter interest in each.

In the cases of the two sisters, the will contains this further provision, and I must next determine the effect thereof:

"If my Sisters or either of them should die before the vesting of the foregoing devise in them leaving issue then I give the share or shares of my said sister or sisters so deceased to her or their issue, and if either of my said sisters should die without issue before the vesting of the said devise, then I give the share of such sister to her heirs at law."

It should be noted that this clause follows the earlier one making an absolute gift to the two sisters, and in such cases the reference to death is construed to mean death in the lifetime of the testator. If either sister had so died, her share was given to her issue, and if none, to her heirs at law.

Both sisters survived the testator, hence the respective one-quarters vested in each.

I have been requested to find that the language of the will "vesting . . . in them" is sufficient to limit the technical word "vesting" to a gift of a mere contingent interest which would not vest till the death of the widow. This I decline to do because the language is not sufficient to cut down a gift absolute in terms.

The principle of law which I am following is well recognized, and a good illustration of its application will be found in Edelman's Estate, 276 Pa. 503, wherein Mr. Chief Justice Moschzisker said in part (page 506):

"She placed the residuary estate in trust during the life of her husband to pay the net income in equal shares of one-fourth each to him, the daughter, the son and the children of her deceased son, adding a provision that, if the income should be insufficient for the comfortable support of her surviving spouse, his share should be increased and each of the other shares proportionately reduced. Immediately upon the death of the husband, the trustees are directed to 'divide' the estate, one-third to the daughter, one-third to the son and the remaining third to the children of Albert. The last item of the will provides that, in case of the death of Adele, her share shall be given to her two children, or the survivor of them, and in case of the death of Raymond, his share shall revert to the estate of testatrix. The latter provision is changed, in the second codicil, and Raymond's one-third portion of the estate, in case of his death, is given to his daughter, Mary Amelia Edelman.

"The court below, in a painstaking and learned opinion, held that 'when the testatrix referred to the death of her daughter, Adele, and her son, Raymond . . . she meant the death of either in her (testatrix's) lifetime.' This conclusion, and the distribution, founded on it, of Raymond's share to the executrix of his estate, are complained of by appellants, who contend that the share of Raymond either belongs to the son of his deceased daughter or that it should be distributed as though the testatrix had died intestate as to that one-third of her residuary estate.

"The auditing judge, speaking for the court below, states its view of the will and the guiding rules of law thus: 'The testatrix had in mind . . . that her daughter or her son, or both, might die before her, and she accordingly provided

for such event . . . by expressly naming substitutionaries. The conclusion is irresistible that the daughter, son and grandchildren [children of Albert], all having survived the testatrix, took vested interests in the residue of the estate, the enjoyment of their shares of the corpus being postponed until the death of the husband. . . . Though there be no other gift than the direction to pay or distribute in the future [here to divide the residuary estate of testatrix at the death of her husband], yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest [here the special interest of the husband], the vesting [of the remainders] will not be deferred till the period in question [Groninger's Estate, 268 Pa. 184, 191]. . . . It is argued that the provisions in the will and the last codicil, that, in case of the death of Raymond, his one-third of the estate should go to his daughter, Mary Amelia, and in case of the death of Adele, her share should go to her two children or the survivor of them, show the testatrix intended that Raymond and Adele were to survive their father. That construction we cannot adopt. It is a general canon of construction [see Murphey's Estate, the next preceding case] that words of survivorship in a will refer to the death of the testator [but, of course, this is subject to the] cardinal rule that the actual intent of the testator must prevail, where it can be ascertained, and it follows that words of survivorship will relate to the death of the life tenant instead of the death of the testator if such intent is clear from the will itself . . . : Morris's Estate, 270 Pa. 120. Here it seems clear that it was not the intention of the testatrix that her son, daughter or grandchildren should have shares of the estate only if they survived the husband. If she so intended, there would have been a direction that the residuary estate should be divided among them if they survived the husband, otherwise to substitutionaries. We accordingly hold that the interest of the daughter, son and the children of Albert, all of them having survived the testatrix, vested in them at her death, by way of remainder, one-third in Adele, one-third in Raymond, and one-third in the five children of the deceased son, Albert.' "

The shares will be awarded to the personal representatives of the various distributees unless petitions are presented setting forth the settlement of the respective estates and that there are no creditors, in which case the awards will be modified awarding payment to the persons entitled under the respective wills or under the intestate law, as the case may be, subject to such tax as may be due.

Of the fund accounted for, the sum of $13,824.25 represents the proceeds of real estate. Mrs. Atwood's share of this fund, she dying in 1886, would be subject to the curtesy of her husband and the life interests of her father and mother, but as they have since died, their interests are eliminated and her share will be distributable to the other heirs at law.

*Thomas S. Williams*, for exceptant.

*James B. Lichtenberger*, for Laetitia Perot Whiting, contra.

*Raymond M. Remick*, for the executor of J. Ward Atwood, contra.

*Henry Wiener, Jr.*, for the executor of Cecelia Knowles Buck, contra.

GEST, J., October 28, 1932.—We agree with the auditing judge in his construction of this will, which is amply supported by authority, especially Edelman's Estate, 276 Pa. 503, which seems to us to be very much in point. The argument of the exceptant turns entirely upon the clause: "If my Sisters or either of them should die before the vesting of the foregoing devise in them leaving issue then I give the share or shares of my said sister or sisters so deceased to her or their issue, and if either of my said sisters should die without issue before the vesting of the said devise, then I give the share of such sister to her heirs at law." The

auditing judge correctly held that this referred to the death of the sisters or either of them before the death of the testator, inasmuch as it followed the absolute gifts to the sisters. The draftsman of the will used the ambiguous word "vesting," and it was argued that this meant vesting in possession. In some wills this meaning may be imputed from the context, but the normal meaning of the word refers to an immediate right of present enjoyment or a present fixed right of future enjoyment: Phillips's Estate (No. 1), 205 Pa. 504; McClellan's Estate, 221 Pa. 261. Here there can be no doubt concerning the meaning of the testator, as the gift in remainder after the death of the widow was in absolute terms to the parents of the testator and his two sisters in equal shares, and no one contends, or could contend, that the parents did not take vested interests at the time of the testator's death. So, therefore, did the sisters, as they are given their shares in the same clause, and the reference to the vesting of their shares must refer to the same date. The conclusion of the auditing judge follows inevitably.

The exceptions are dismissed and the adjudication is confirmed absolutely.