**Reed Estate**

*Paul P. Wisler* and *C. Leo Sutton*, for accountants.

*Roland Fleer, Lewis H. Van Dusen, Jr.,* and *Drinker, Biddle & Reath,* for administratrix of estate of Alan H. Reed, 2nd; *C. Brewster Rhoads,* for Mary Allison Reed Haviland, and as guardian ad litem for Aubrey Allison Haviland and Katherine Reed Haviland, minors; and *William L. Huganir,* guardian ad litem for Michael Reed, minor.

TAXIS, P. J., December 20, 1961.—Testator, Alan H. Reed, died April 29, 1930. The trust is created under the following provisions of his will:

"SIXTH: All the rest, residue and remainder of my estate I give to my Executors IN TRUST for the following uses and purposes:

"(a) To divide the net income in equal shares between my wife and children living at the time of my death, the share of my wife to be paid to her during her life, and the share of my children to be paid to her for their use, but without any obligation to account, until they respectively reach the age of Twenty-one (21), and thereafter to them during their respective lives. My Trustees shall have power, however, in their absolute and uncontrolled discretion or in the discretion of a majority of them, to retain and withhold all

or any part of the income accruing to any child between the ages of Twenty-one (21) and Thirty (30), the amount so withheld to be paid to such child at age Thirty (30) or at such earlier time as my Trustees may deem best for such child's interest.

"(b) *On the death of my wife, her share shall be added to the shares of my children,* and upon the death of any child, the principal of his or her share shall be paid to such person and for such uses as such child may by deed or will or any instrument in the nature thereof, designate and appoint, or in default of such appointment, to the lineal descendants, of such child living at the time of his or her death. In default of such appointment and of such lineal descendants, such child's share shall be added to the shares held in trust for my wife (if living) and my other child or children, to be held upon the same trusts as provided with respect to such shares." [Italics supplied.]

The fund in question was awarded to Girard Trust Company, Katharine C. Reed and Ralph B. Evans, testamentary trustees. On November 24, 1936, Ralph B. Evans, co-trustee, died, and Richardson Dilworth, Esq. was duly appointed succeeding trustee. Thereafter, by reason of merger and change of name, the corporate trustee, Girard Trust Company, became known as Girard Trust Corn Exchange Bank.

Testator was survived by his wife, Katharine C. Reed, his son, Alan H. Reed, Jr., and his daughter, Mary A. Reed Haviland. Alan H. Reed, Jr. was killed while serving in the Armed Forces of the United States, on or about October 24, 1944. The last will and testament of Alan H. Reed, Jr. was not effective to exercise the power of appointment contained in paragraph sixth (b) of his father's will, and therefore that part of the principal from which Alan Reed, Jr., was entitled to receive income, vested in Alan Reed, 2nd and Michael Reed, being retained during their minorities by the testator's executors and trustees.

Testator's son was survived by his widow, Patricia G. Reed (now Mason) and by two sons, Alan H. Reed, 2nd and Michael Reed. Alan H. Reed, 2nd, died December 31, 1957;* Michael Reed is a minor for whom William L. Huganir, Esq., has been appointed guardian ad litem. Testator's daughter, Mary A. Reed Haviland, has two minor children, Aubrey Allison Haviland and Katharine Reed Haviland, for whom C. Brewster Rhoads, Esq., has been appointed guardian ad litem.

The present account is filed because of the death of Katharine C. Reed, widow of the testator and co-trustee, on October 14, 1960. Her death calls for the distribution of the principal of the share from which she was receiving the income.

The account shows a balance of principal for distribution of $1,550,152.39, composed of bonds and shares of stock, set forth on pages 2-6, totalling $1,553,061.98, there being due accountants out of said bonds and shares of stock $2,909.59, and a balance of income for distribution of $46,653.90. A supplemental account representing the income accumulation account of the share of the income of Michael Reed, a minor, shows a balance for distribution of $37,610.63, composed of bonds and shares of stock, set forth on page 2, totalling $22,464.52, and cash.

The transfer inheritance tax has been paid.

The proper interpretation of item sixth (b) of the will is the question requiring determination by this court. More specifically, the question may be stated as follows: Since the son, Alan H. Reed, Jr., and the grandson, Alan H. Reed, 2nd, both predeceased Katharine C. Reed, the widow and life tenant, should the

---

* Prior records in this case disclose a possible discrepancy in the dates of death of Alan Reed, Jr., and Alan H. Reed, 2nd, for future reference, the following dates should be used:

1. October 24, 1944, date of death of Alan Reed, Jr.

2. December 31, 1957, date of death of Alan H. Reed, 2nd.

share Alan H. Reed, Jr., deceased son, would have received if he had survived his mother be distributed (a) to the trust for Mary Allison Reed Haviland and her issue; (b) to the trustees for the benefit of Michael Reed, surviving child of Alan H. Reed, Jr., or (c) in equal shares to the trustees for the benefit of Michael Reed and to Patricia Goodall Mason, administratrix of the estate of Alan H. Reed, 2nd, deceased.

Mary Allison Reed Haviland and C. Brewster Rhoads, Esq., guardian ad litem argue that because item sixth (a) created life estates for testator's widow and children living at the time of his death, it can be inferred that the gift of the widow's share in item sixth (b) was intended for the benefit of the children living at the time of her death, and that the entire share of principal, from which Katharine C. Reed received the income during her lifetime, should be awarded to the trust for Mrs. Haviland and her issue.

Secondly, the same parties contend that since Alan Reed, Jr.'s "share" has been paid out there is no longer any share which belongs to Alan H. Reed, Jr., and under the present facts, the only share to which the share of testator's widow can be added in accordance with the instructions that it "be added to the shares of my children" is the share now held for Mrs. Haviland and her children.

Finally, the same parties argue that testator's emphasis upon "lineal descendants" in disposing of his children's shares to "lineal descendants of such child living at the date of his or her death," indicates his preference for keeping his estate within his blood line. Such a preference has influenced courts to determine a particular gift is contingent rather than vested: Philadelphia Trust, Safe Deposit and Insurance Company's Appeal, 108 Pa. 311; Loving Estate, 159 Pa. Superior Ct. 339.

Mr. Rhoads also cites the Act of June 29, 1923, P. L. 914, 21 PS §11, re-enacted in section 14(4) of the Wills Act of April 24, 1947, P. L. 89, as an applicable statutory rule of construction. The statute, insofar as pertinent, provides:

". . . hereafter when, in and by the provisions of any . . . will . . . property, either real or personal, or both, shall be . . . devised, or bequeathed, either directly or in trust, for the use and benefit of any person, . . . for years or for life or upon condition, and which shall provide therein that, upon the termination of the estate for years or for life or upon breach of condition or other cause, the remainder over shall vest in the . . . testator's heirs or next of kin or the persons thereunto entitled under the intestate laws, or other similar or equivalent phrase, the same shall be construed as meaning the person or persons thereunto entitled at the time of the termination of the estate for years or for life or upon condition under the intestate laws of the Commonwealth as they shall exist at the time of such termination; and such phrases shall not be construed as meaning the person or persons who were the heirs or next of kin of the donor at the time . . . the testator died: Provided, however, That nothing herein contained shall be construed to prevent any . . . testator from expressly or by necessary implication directing otherwise: . . ."

The inference suggested in the first argument of the Havilands noted above cannot be made without begging the question. Granted that item sixth (a) created life estates for testator's widow and children living at the time of his death, this is no basis for deciding that item sixth (b) was intended for the benefit of the children living at the time of her death.

The second argument of the Havilands is astute, technically speaking, but unrealistic. It could just as easily be said that there was no widow's share after

the death of his wife and that the language "On the death of my wife, *her share* [Italics supplied] shall be added to the shares of my children" is ineffective for want of a widow's share. The final argument of the Havilands noting the emphasis upon "lineal descendants" is weakened by the fact that testator gave his children general powers of appointment. In this manner, he himself created the possibility of devolution outside lineal descendants.

The will does not set forth a requirement that Alan H. Reed, Jr., survive his mother in order that his line of descendants might participate equally with those of his sister in any subsequent accruals. The only condition of survivorship in regard to the children of testator is the requirement that they be "living at the time of my [testator's] death." The direction that the widow's share be "added to the shares of my children" was simply a direction that the respective portions of the widow's share should follow the same course of distribution as the original shares of the children.

Testator knew how to spell out a condition of survivorship. In both paragraph (a) and paragraph (b) of item sixth, testator set forth a survivorship requirement. In paragraph (a), testator required his children to survive him in order to become entitled to any share in the trust. Furthermore, in one sentence in paragraph (b), testator clearly indicated that accruals were to inure to his wife's share only if she were living at the time of their distribution but that accruals would inure to the children's shares regardless of whether the child survived to the time of their distribution. Thus, testator provided that upon the death of a child such child's share, if not otherwise disposed of, would be "added to the shares held in trust for my wife (if living) and my other child or children."

Since Alan H. Reed, Jr., died before the widow, his life interest in her share of the income never became

operative, but the remainder interest in default of appointment given to his descendants vested in interest at the time of his death even though it could not vest in possession until the death of the widow. In this respect the present case is very much like Roberts' Estate, 2 D. & C. 347, where a share of residue passed under a power of appointment even though the donee of the power predeceased a prior life tenant. Testator had provided that one-third of his residuary estate should be held in trust for his surviving spouse for her life, and upon her death divided into five equal shares and held in trust for his five named children for their respective lives. Testator provided that the share of one daughter should be held for the benefit of that child for her life and upon her death without issue it should remain "in trust for the rest of my children during their lives in equal shares as herein provided in reference to the shares of my residuary estate herein devised in trust for them." The child life tenant died without issue after the death of one of the other children, a son, who had exercised a power of appointment over his share of the residuary estate in favor of his surviving spouse. The court held that survival of the donee of the power of appointment was unnecessary and that the appointee was entitled to a proportionate part of the share of residue which passed because of the death of the child life tenant dying without issue. The language "in trust for the rest of my children during their lives" did not mean "then surviving children."

The common law rule of construction applied to survivorship questions prior to the Act of June 29, 1923, P. L. 914, 21 PS §11, referred to the time of the death of the testator unless a contrary intent appeared in the will: Nass' Estate, 320 Pa. 380. The Act of 1923 has changed this rule of construction in certain cases for the purpose of avoiding the whole or part of a fund

from going to the estate of a deceased heir, a result which the testator could scarcely have contemplated: Bregy, Intestate, Wills and Estates Acts of 1947, p. 3063.

The use of the word "children" by the present testator in designating the class of takers does not eliminate the Act of 1923.

"It may be very safely concluded that the legislature could not foresee every possible wording which a testator might use to define classes of persons to take in remainder (such as 'issue,' 'children,' 'granchildren,' 'descendants' and the like) and determined to cover them all by the expression 'similar or equivalent phrase' ": Bonsall's Estate, 288 Pa. 39. See also, Laughlin's Estate, 338 Pa. 529, Tripp Estate, 50 Luz. 91, aff'd. 402 Pa. 211.

"The actual intent, if apparent on the face of the will, of course, supersedes any artificial rule of construction." Bregy, Intestate, Wills and Estates Acts of 1947, p. 3066. In the present case, the provisions of item sixth of the will show an intent on the part of testator contrary to the provisions of the Act of 1923.

It is unlikely that testator intended to discriminate among the branches of his family solely on the basis of which of his children happened to survive his widow. See Edelman's Estate, 276 Pa. 503. This would be inconsistent with the purpose of the Act of 1923, which was designed to prevent the estates of deceased persons from taking, not to cut out grandchildren whose parents suffered an early death. Furthermore, a construction that a child's share can be augmented only if the child survived the widow, would have meant an intestacy with respect to the widow's share had both the testator's children predeceased the widow. The symmetry of the language used rejects such an interpretation.

Similar testamentary schemes have been held to show an intention on the part of testators to create vested interests in remaindermen: Hope Estate, 398 Pa. 470; Moyer Estate, 389 Pa. 228; Ziegler Estate, 356 Pa. 93; Edelman's Estate, 276 Pa. 503; Groninger's Estate, 268 Pa. 184. Although the Act of 1923 was inapplicable to the foregoing cases because the respective testators died before it became effective, these cases show an analysis by the court of testator's intent in similar situations. The Act of 1923, of course, is a rule of construction and as such is subservient to the great rule as to intent: Lusk Estate, 354 Pa. 6. See also Metzgar Estate, 395 Pa. 322. In the present case, testator did not intend to require a child to survive his widow in order that such child's share be augmented by a proportionate part of the widow's share.

The next question is whether or not the estate of Alan H. Reed, 2nd, is entitled to share equally with Michael Reed in the accrual resulting from the death of their grandmother. Again the question is one of interpretation.

The will by its terms expressly provides that a child's share shall be paid to the descendants of such child living "at the time of his or her death." The pronouns "his or her" must refer to "such child," meaning his son or daughter.

In Hope Estate, 398 Pa. 470, under similar circumstances, the Supreme Court decided that the estate of a remainderman surviving his immediate ancestor but predeceasing a life tenant had a vested interest in the accruals to his immediate ancestor's share in the estate. The following quotation is taken from page 476 of the opinion:

"In Rubicam's Estate, 48 Pa. D. & C. 486, Judge Hunter aptly said: 'We construe this language to mean that the accruing shares shall pass to testator's other

children and their issue subject to the same limitations as their original shares. If the original shares had vested in issue, then accruing shares also were vested. In other words, the intention of the testator was not to make new gifts to children and issue, subject to new conditions and contingencies, but merely to augment or enlarge the original gifts. See McGlinn's Estate, 320 Pa. 389.' "

The same reasoning is applicable to the facts of the present situation. If Alan H. Reed, 2nd, had a vested remainder in the original share of his father at his father's death, as indeed he did, then he had a vested interest in all subsequent accruals to his father's share. See also Brumbach Estate, 373 Pa. 302; Straus Estate, 351 Pa. 136; Carstensen's Estate, 196 Pa. 325.

Therefore, the share Alan H. Reed, Jr., deceased son, would have received if he had survived his mother should be distributed in equal shares to the trustees for the benefit of Michael Reed and Patricia Goodall Mason, administratrix of the estate of Alan H. Reed, 2nd, deceased.

And now, December 20, 1961, this adjudication is confirmed nisi.