Estate of Jacob Steinmetz, deceased. Appeal of Provident Life and Trust Company, Guardian.

194    611
137SC  345

*Will—Construction— Children— Grandchildren.*

Testator, after having given a life estate in a share of his real estate to each of his four children with remainder to their children, further directed that in case of the decease of any of his children, naming them, " without leaving lawful issue surviving them, then and in such case" the share of the child so dying was to go to the "surviving child or children in equal shares." *Held,* (1) that the time of survivorship referred, not to the death of the testator, but to the death of a child; (2) that the share of a child who died without issue passed to the surviving children of the testator, and that a grandchild whose parent was deceased was not entitled to participate in such share.

Argued Jan. 29, 1900.   Appeal, No. 384, Jan. T., 1899, by Provident Life & Trust Company, from decree of O. C. Montgomery County, dismissing petition for distribution.   Before GREEN, C. J., McCOLLUM, DEAN, FELL and MESTREZAT, JJ. Affirmed.

Petition for distribution.

SWARTZ, P. J., filed the following opinion:

This application was heard on petition and answer. The rights of the claimant must be determined by the interpretation of the will of Jacob Steinmetz. The testator devised his homestead to the executors in trust for the use of his wife and children, naming them. This farm, he declares, shall be a home to them "as long as they can remain together and desire so to do." A majority or majority of the survivors may request a sale of the farm, and the proceeds he gives to the wife and four children absolutely, share and share alike. If, however, the wife or any of his said children should be deceased at the time of his death or at the time of the sale of the farm then the share of the one so deceased shall go to the survivors in equal shares. All his personal estate he gives to his wife and four children share and share alike. All the real estate other than the homestead aforesaid he gives, devises and bequeaths as follows:

"Item 4th.   I give, devise and bequeath the use, improve-

ment, rents, interest and income arising from one-fifth part thereof unto my beloved wife Christina T. for and during all the term of her natural life and from and immediately after her death I give and devise the said one-fifth part or share to be equally divided share and share alike between my four children above named—the part or share in this bequest or devise of my said children to be held, however, by them in the same manner and for the same uses as are hereinafter set forth and declared of and concerning the parts or shares of my said real estate in this item mentioned bequeathed and devised for the use of my said children.

" The use, improvement, rents, interest and income arising from one other fifth part thereof, I give, devise and bequeath unto my daughter Susan Rebecca, for and during all the term of her natural life and from and immediately after her death, then as to the said one-fifth part of my said real estate, ground rents, etc., to and for the only proper use and benefit of all and every the child and children which she my said daughter may leave and the lawful issue of any of them who may then be deceased having left such issue, to be equally divided between them share and share alike, such issue of any deceased child or children of my said daughter taking however only such part or share thereof as his or her or their deceased parent or parents would have had and taken had she or they been living.

To each of the three sons he gives and devises one-fifth of his real estate, in the same language and for the same uses in which the bequest is made to the daughter, except that the share of Jacob R. is to be free, clear and discharged from any claim of his creditors.

In item five he provides : " In case of the decease of my said sons, Jacob R., John B., George H. or my daughter Susan Rebecca, or either of them without leaving lawful issue surviving them, then and in such case I give, devise and bequeath the said part or share hereinbefore given, devised and bequeathed to the child or children of my child so dying and the use, improvement, rents, interest and income thereof hereinbefore given for life to my child so dying, in item 4th unto my surviving child or children in equal shares and proportions in the same manner for the same uses, intents and purposes as are hereinbefore set forth and declared of and concerning the parts or

shares of my said real estate hereinbefore in item 4th given, devised and bequeathed for the use, benefit and behoof of my said children respectively."

We cited such parts of the will of Jacob Steinmetz as are pertinent to the issues now pending before us. The wife and four children survived the testator. The widow died in 1888. Susan Rebecca died in 1890, leaving to survive her a husband, Samuel A. Bailey, now deceased, and one child, Jacob Steinmetz Bailey, the petitioner in this case. Jacob R. died in 1897, without leaving lawful issue to survive him.

The executors of Jacob Steinmetz, the elder, filed their account showing a balance of real estate in their hands amounting to $91,692.08, and income on the same, accrued after the death of the son Jacob L., amounting to $1,555.62. This said principal fund constitutes three-fourths of that part of testator's estate designated in his will as all the rest, residue and remainder of his real estate, including ground rents, passing under the fourth and fifth items of the will, and is held by the executors as trustees.

The remaining one-fourth of the said principal fund was, upon the death of Susan Rebecca, paid to the guardian of Jacob Steinmetz Bailey, who was the only lawful issue of the said Susan.

The petitioner contends that, upon the death of the son, Jacob R., without issue, one third of this principal fund became distributable in equal shares to John B., George H. and the minor Jacob Steinmetz Bailey, or one ninth thereof to each. The executors and trustees contend that the income of said principal fund belongs to the said John B. and George H. as the surviving children of the testator, and that the principal fund must remain intact and be held by the trustees for the benefit of said two surviving children. This controversy arises over the interpretation to be given to the fifth item of testator's will. The other portions of the instrument are important only so far as they may throw light upon the testator's intent and meaning in his use of the language found in the fifth item. This fifth item provides for the disposition of an interest in the real estate in case a son or daughter should die without leaving lawful issue surviving him or her. To what period does the time of survivorship refer? Clearly not to the death of the

testator but to the death of the son or daughter. It is true that the period of survivorship is to be taken as the death of the testator unless a contrary intent is apparent. The will gives a life estate in this realty to the sons and daughter. The primary and controlling gift is to the sons and daughter for life and upon the death of any one leaving issue, the remainder is to pass to such issue, but in case of death without leaving issue then certain interests pass to the surviving children. The words, "Immediately after the death of my son, then as to the said one fifth part of my said real estate to and for the only proper use and benefit of all and every the child and children which my said son may leave," clearly fix .the time when the issue can take, to wit, the death of the son and the devise to surviving children must refer to the same period, for then only can the contingency on which alone they are to take, be determined. Woelpper's Estate, 126 Pa. 562. The four children and their issue were the principal objects of the testator's bounty, and the time he had in mind when the shares should possibly go to any one else, was the death of his children respectively, and it was with reference to that time that he designated the surviving children. Who are included in the words "unto my surviving child or children," in the fifth item of the will?

Under a bequest to children, grandchildren and other remote issue are excluded unless it be the apparent intention of the testator, declared by his will, to provide for the children of a deceased child. But such construction can only arise from a clear intention or necessary implication, as where there are not other children than grandchildren or when the term "children" is further explained by a limitation over in default of issue. The word "children" does not ordinarily, and properly speaking, comprehend grandchildren, or issue generally. Their being included in that term is only permitted in two cases, viz: from utter necessity, which occurs when the will would remain inoperative unless the sense of the word "children" were extended beyond its natural import, and where the testator has clearly shown by other words that he did not intend to use the term "children" in the proper actual meaning, but in a more extended sense: Hunt's Estate, 133 Pa. 260; Barnitz's Appeal, 5 Pa. 264; Horwitz v. Norris, 49 Pa. 213; Castner's Appeal, 88 Pa. 478. The petitioner fails to bring his case within

either exception to the general rule of construction.   There is no necessity to give the extended meaning to the word.   There are children living now, and all the children were living when the testator died and the will went into effect.   Nor has the testator clearly shown by other words that he uses the word children in its most extensive sense.   Throughout the whole will when he uses the word "children" there are modifications and explanatory words which clearly show that by the use of the word he means to designate his three sons and daughter. He speaks of them in the second item, as "my four children," "my wife and children or a majority of them," "my said children."   In the third item as well as in the fourth, he repeats the words, "my four children," and "my said children."   Again in the fourth item when he wishes to designate grandchildren, he uses the word "children" in its restricted or general meaning, by calling them the children of his daughter.   When in the fifth item he uses the words, "my surviving child or children" we see no justification for giving the word a more extensive meaning than the testator has given to it, throughout every other part of his will.

Again, the words, "herein before given for life to my child so dying" necessarily refer to one of his four children, and the words immediately following "unto my surviving child or children" must be confined to the same class.   If the words "my child," in the antecedent clause, mean son or daughter, as they clearly do, how can we give to the words, "my surviving children" in the subsequent clause a wider signification?   It is said that unless the word "children" is held to include grandchildren, a partial intestacy may follow.   This is true, but a testator may fail to contemplate and provide for every contingency that can arise under his scheme of distribution.   This fact is no justification for giving words a signification that does not belong to them, in order to avoid intestacy.

It is also contended that our interpretation of the will works out inequality as to the grandchildren, but inequality as to this class is evinced in the very first disposition the testator makes of any part of his property.   The homestead is given to the longest liver of the four children and his issue, to the exclusion of other grandchildren, should their parents die before the testator or before a sale of the property.   The inequality in the dis-

position of the residue of the real estate is entirely consistent with the preference given to a surviving son or daughter in the disposition of the homestead.

The fourth and fifth items secure for the grandchildren, if any, the full share set apart for the parent, but when the testator contemplates the death of a son or the daughter without issue and a further disposition of the share so set apart becomes necessary, his mind and thought turn to the first objects of his bounty,—the survivors of his four children. It may be questioned whether his thought passed beyond the survivors of his four children, for to our mind it is not clear that the testator disposed of the corpus of a share where the son dies without leaving issue. The survivors of his four children are to have the income of such share just as they receive the income of the one-fifth set apart to them respectively, but what becomes of it upon the death of the last survivor? It is, however, unnecessary to pass upon this last inquiry, and we do not wish to express an opinion upon the subject, for we are satisfied that for the present the principal fund of $91,692.08 must remain intact in the hands of the executors and trustees to pay the rents, income and interest thereof to the two surviving sons.

And now, May 29, 1899, the application for distribution of the principal fund and its accrued interest to the guardian of the minor Jacob Steinmetz Bailey is refused, and the application is dismissed.

*Error assigned* was the decree of the court.

*Charles C. Townsend*, with him *Henry Freedley* and *B. Percy Chain*, for appellants.—The cardinal canon in the construction of wills is the testator's intention, his individual intent; and in aid of this certain minor rules, the latter, however, to be applied as aids, not fetters : Tyson's Est., 191 Pa. 218; Lewis's App., 18 Pa. 323.

So the law leans against intestacy and in favor of the heir, following as closely as possible the rules of inheritance : Boies's Est., 177 Pa. 190; and to effectuate the intent will construe "surviving" to mean "other:" Lewis's App., supra; "children" to mean "issue:" Dickinson v. Lee, 4 Watts, 83.

The modern tendency is to regard the word "children" as

a flexible one, and that the broader meaning should be preferred except in those cases where the clear intent of the testator was to use it in its restricted sense, as in Castner's App., 88 Pa. 478, Bowman's Case, L. R. 41 Ch. Div. 525, Eyre v. Marsden, 4 Myl. & Cr. 231, Bowker v. Bowker, 148 Mass. 203, and Douglas v. James, 66 Vt. 21.

*Montgomery Evans*, with him *James B. Holland* and *John M. Dettra*, for appellee, cited Hunt's Est., 133 Pa. 260, and Castner's App., 88 Pa. 478.

PER CURIAM, February 12, 1900: .

The decree in this case is affirmed on the opinion of the learned court below.