Hood's Estate.

Argued May 20, 1936.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, LINN, STERN and BARNES, JJ.

*Byron A. Milner,* for appellant (Nos. 202 and 248).

*George Sterner,* for appellant (No. 249).

*E. Spencer Miller,* for appellant (No. 241).

*A. S. Ashbridge, Jr.,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 26, 1936:

The will of James Hood provides: "I give, bequeath and devise all the rest, residue and remainder of my property and estate, real, personal and mixed, of whatsoever kind and wheresoever situate, to my children, Mary Virginia Gigon, wife of Jules Gigon, Emma S. Baum, wife of George W. Baum, James D. Hood and Frederick R. Hood, in equal shares, and in case any of my said children should be dead at the time of my decease, then the share or shares of such child or children shall vest in their issue in equal shares respectively, per stirpes, and in default of such issue, then in the survivors among my said children or in their issue as the case may be, and Provided and Excepting, that the said share of Mary Virginia Gigon, or of her issue as the case may be, is to be charged with the sum of Six Thousand Dollars ($6,000) with interest thereon at the rate of four per cent (4%) per annum from April 1st, 1900, as the value of property already advanced to her, the said sum to be deducted from the said share and to be then equally divided among all my said children including the said Mary Virignia Gigon or her issue, and in default of such issue then among the survivors in equal shares per stirpes, and the said shares of my said children and issue to be to them absolutely and in fee simple, excepting that one-half of the said share of the said Mary Virginia Gigon shall be held by my Executors hereinafter named in Trust to pay over the net income thereof to her during her life, so that the same shall not be liable for her or her husband's debts or engagements and in further trust upon her death to pay over and transfer and assign the principal thereof to her issue and in default thereof to

my surviving children and issue in equal shares per stirpes as above provided."

Of the four children who outlived the testator, James D. Hood alone survives. Emma S. Baum (by her second marriage Cramp) died in 1915, leaving two children surviving, Margery Baum Murdock and Helen Cramp. She appointed her husband, Joseph A. Cramp executor. Frederick R. Hood died in 1921, leaving no issue. His wife, Josephine M. Hood, survives him and is sole beneficiary and executrix of his will. Mary Virginia Gigon died December 18, 1934. She left no issue surviving her. She had two children, both of whom survived the decedent. They died in the lifetime of their mother, unmarried, intestate and without issue. She divorced her husband, Jules Gigon, on February 20, 1922. He is still living. She left her entire estate to her brother, James D. Hood, and appointed him executor.

The question is who is entitled to the one-half share which was devised to Mary Virginia Gigon for life, the provision of the will being: "upon her death to pay over and transfer and assign the principal thereof to her issue and in default thereof to my surviving children and issue in equal shares per stirpes as above provided."

The auditing judge made an award of one-third of the share to James D. Hood, one-third to Josephine M. Hood, executrix of Frederick R. Hood, and one-third to Joseph A. Cramp, executor of Emma S. Baum. On exceptions filed, the court in banc changed the distribution and made an award of one-fourth to James D. Hood, executor of Mary Virginia Gigon, and one-fourth to each of the three distributees named by the auditing judge. From this decree Margery Baum Murdock and Helen Cramp, granddaughters of the testator and children of Emma S. Baum (Cramp), and Josephine M. Hood, executrix of Frederick R. Hood, appeal.

In his opinion the auditing judge said that the question presented is one of the most perplexing ones of construction ever coming before him. He turned the solu-

tion of the problem largely on the words "as above provided" and if they were to be held controlling, the problem would be a difficult one. He thought that these words reverted back to the language in the previous part of the paragraph "in case any of my said children should be dead at the time of my decease, then the share or shares of such child or children shall vest in their issue in equal shares respectively, per stirpes, and in default of such issue, then in the survivors among my said children or in their issue as the case may be," and held that the gift passed to those of the children of the testator who were living at his death as vested remainders, eliminating, however, Mary Virginia Gigon. As to her, he said: "I eliminate any consideration of the contention that James D. Hood is entitled to the whole of this share as executor and sole beneficiary under the will of his sister, Mary Virginia Gigon. This was not a vested remainder in her. Her one-fourth share given to her in fee, was cut down one-half. As to that half, which is the fund now before me, she was given but a life estate and nothing more. No citation of authority seems necessary in the face of the plain and unequivocal terms of the will." We are in agreement with this conclusion so far as any interest in Mary Virginia Gigon is concerned for reasons which will hereafter be stated.

The court in banc awarded to her executor a share, saying: "The next question is as to who are entitled by the expression 'my surviving children and issue.' If there was nothing more it would seem that the contingency of survivorship to the time of distribution should be implied among the substitute beneficiaries as well as among the original beneficiaries. See *Steinmetz's Est.*, 194 Pa. 611. But there is added the words 'as above provided.' This must mean something; and when we look above for the other reference to surviving children we find it in the general gift of the residuary estate. This is a gift to the children of the testator equally (Mary's separate use trust being excepted out of her share) and

'in case any of my said children should be dead at the time of my decease, then the share or shares of such child or children shall vest in their issue in equal shares respectively, per stirpes, and in default of such issue then in the survivors among my said children or in their issue as the case may be.' The testator here expressly directs that the surviving children are to be determined 'at the time of my decease' and this applies by his direction to the persons who are to take at the death of Mary. The children who survived the tesator were four—Mary, Emma, James and Frederick, and the awards should be to them or their personal representatives if they are dead. The auditing judge treated the word 'survivors' (which included a life tenant) as 'others.' Therefore, excluding Mary, he awarded in three parts to the others. Although Mary was the life tenant, she may nevertheless be one of the remaindermen: *Tatham's Est.*, 250 Pa. 269; *Nass's Est.* [320 Pa. 380]."

It will be seen that the court in banc turned the case entirely on the words "as above provided." The effect of this conclusion is to pass this share of the testator's estate to persons who, other than the son James, are not of the blood of the testator and to give nothing to his two grandchildren, Margery Baum Murdock and Helen Cramp. We think no such result could have been contemplated or intended by the testator, and what we are searching for is his intent. The entire paragraph indicates that it was his intent to pass his property to persons of his own blood. In our opinion, the words "as above provided" do not control in the construction of the entire paragraph of the will, they simply modify the words "per stirpes" and the direction "upon her death [Mary's death] to pay over and transfer and assign the principal thereof to her issue and in default thereof to my surviving children and issue in equal shares per stirpes" means to pay it over to those who are living, therefore in being to receive it, at the death of the life tenant. These are James D. Hood, the surviving son,

who takes one-half, and the two grandchildren, Margery Baum Murdock and Helen Cramp, each of whom takes a fourth.

The direction to pay over contemplates living persons at the time when payment is to be made: *Alburger's Est. (No. 2)*, 274 Pa. 15, 20, 117 Atl. 452, and cases cited. See also *Scott's Est.*, 301 Pa. 509, 152 Atl. 560. "Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance, and whoever claims against the laws of descent must show a satisfactory written title": *Grim's App.*, 89 Pa. 333, 334; *Conner's Est. (No. 2)*, 318 Pa. 150, 158, 178 Atl. 15, 18.

The testator had given Mary a life estate only in one-half of her share. This one-half share he treated differently. He changed the time of vesting of this share and did not say that it should be distributed to the survivors among his children in the event of the death of a child leaving no issue before he died, but upon Mary's death "to pay over" in default of issue to his surviving children and issue. There could be no payment over to those who were then dead. At the death of Mary, the life tenant, the only living descendants of the testator who survived the life tenant were the son, James D. Hood, and the two granddaughters, Margery and Helen.

The writer of this opinion sympathetically quotes what was said by the present Chief Justice in *Alburger's Est. (No. 2)*, supra, where the question was the same as here, "It would be more than difficult for the writer of this opinion to follow the finely spun threads of difference used in emphasizing the distinguishing element of each [decided case]." There we said (page 19) : "Testator's will seems to indicate an intention to create an estate to begin and take effect at the widow's death, and it first appears as such from the direction to pay and divide the principal." In the case in hand the same intent appears "upon her [Mary's] death to pay over and transfer and assign the principal thereof." If she had left issue, this

certainly would mean at her death and we think it so meant if she did not leave issue. As was said in that case (page 20), "Where the estate that follows is then [after the termination of the life estate] brought into being through a direction to pay and divide among surviving brothers and sisters, if living, the description of the event which determines the prior estate will be construed not only as determining the possession or enjoyment of the prior gift, but as being designed to postpone the vesting of the ulterior estates there granted."

While it is true that generally speaking the rule applied to survivorship has been held to refer to the time of the death of the testator: *Nass's Est.*, 320 Pa. 380, 182 Atl. 401; *Johnson v. Morton*, 10 Pa. 245; *Ross v. Drake*, 37 Pa. 373, it is not a hard and fast rule but is subject to many exceptions. It does not apply where a contrary intent appears in the will: *Nass's Est.*, supra; *Woelpper's App.*, 126 Pa. 562, 17 Atl. 870; *Alburger's Est. (No. 2)*, supra. In *Nass's Est.* (page 383), we said: "The rule is not without sound reason, for its general effect is to distribute the property among all of testator's descendants rather than to shunt it off into one line where it may pass out of the family." Here the result would be just the opposite, part of his estate would pass out of his blood and his grandchildren would get nothing.

While it has no controlling effect, because the will in hand is dated before its approval (and it stipulates that it shall have no effect upon wills so antedated), the Act of June 29, 1923, P. L. 914, 21 PS section 11, provides a limitation over after termination of an estate for life shall be construed as vesting the estate in the persons entitled at the termination of the estate for life and not be construed as meaning the person or persons who are the heirs or next of kin of the donor at the time the testator died.

A question of practice has been submitted about which the profession is apparently in some doubt. Whether a decree of the orphans' court dismissing exceptions to and

confirming its adjudication absolutely or the schedule of distribution subsequently approved is the definitive decree from which an appeal lies. Our conclusion is that an appeal lies from the completed decree after the filing of the schedule of distribution, that is to say, the appeal should not be taken until the schedule of distribution is filed: *Graham's Est.*, 294 Pa. 493, 494, 144 Atl. 427; *Levy's Est.*, 307 Pa. 522, 161 Atl. 740; *Maron's Est.*, 317 Pa. 476, 177 Atl. 768. In those cases where no schedule of distribution is required, the appeal, of course, should be taken from the decree dismissing exceptions and confirming the adjudication. This results in the dismissal of the first appeal taken by Margery Baum Murdock, No. 202, January Term, 1936.

The decree is reversed in the appeal of Margery Baum Murdock, No. 248, January Term, 1936, and in the appeal of Helen Cramp, No. 241, January Term, 1936; also in the appeal of Josephine M. Hood, executrix of Frederick R. Hood, No. 249, January Term, 1936; with direction to make distribution one-half to James D. Hood and one-fourth to Margery Baum Murdock and one-fourth to Helen Cramp.

Costs to be paid out of the estate.