## Hirsh's Trust Estate.

Argued January 4, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas Stokes,* with him *William Carson Bodine,* of *Pepper, Bodine, Stokes & Schoch,* and *Frank A. Bedford, Jr.,* for appellants.

*Theodore G. Rich,* with him *James L. Stern,* of *Rich & Stern,* for appellees, executors.

*Joseph First,* with him *Murdoch, Paxson, Kalish & Green,* for appellee, trustee ad litem.

174

OPINION BY MR. JUSTICE MAXEY, March 22, 1939:

The question before us is the construction of a somewhat involved plan of distribution of a trust established in his lifetime by a settlor now deceased. Prior to his death on August 31, 1930, Julius Hirsh, by deed of trust dated July 17, 1930, transferred to trustees a large corpus of securities to be held by them during his lifetime, the income to be paid to the settlor. At his death the settlor directed small legacies to be paid to charities, and the balance of principal was then to remain in trust, one-third of the income to go to the settlor's widow during her life, the balance to the settlor's descendants *per stirpes,* except that so long as his daughter Edith H. Myers should live with her mother, her share of income was to be paid to the latter.

Then follow directions for the disposal of the trust at the death of the widow. The deed of trust first states: "Settlor has during his lifetime given to his wife, Sarah E. Hirsh, assets of the value of two hundred and forty thousand dollars, and since it is settlor's desire that his children be treated fairly and equally in the disposition of his property, said trustees shall before making division of said balance of the principal of the trust under this deed as hereinafter provided, determine, in the following manner, the value of the estate of said Sarah E. Hirsh for the purposes of this trust." This provision was that if the inventoried value of the widow's estate, plus the value of her real estate, exceeded $240,000, the trustees should use the actual value of her estate in setting up the trusts for children, as hereinafter explained; if equal to or less than that sum, then the figure $240,000 was to be used. To the value of the widow's estate, so appraised, the trustees were required to add the balance of principal of the trust and the sums advanced by the settlor to his son-in-law, Lawrence B. Myers, with interest to the death of the widow. They were then directed to divide this total into three equal parts and to set up

separate trusts for the settlor's daughter Pauline and son Gould, respectively, out of the actual balance of the trust estate, each to consist of so much thereof as equalled one of the three equal parts, determined as stated above, less in the case of each the amount which they "may be entitled to have held for [their] use and benefit, or which [they] or [their] issue may be entitled to receive" from the estate of the settlor's widow under the provisions of the latter's will. The balance of the corpus, after setting up the trusts for Pauline and Gould in accordance with the foregoing computation, was directed to be set up as a separate trust for the settlor's third child, his daughter Edith. There were additional provisions in the case of each of the three separate trusts for the children which permitted each child to appoint his or her share by will, with remainders to issue.

It is apparent from this instrument that it was the purpose of the settlor to retain as large a measure of control over his widow's estate as he could, and by doing so, on the one hand, to benefit his children equally, and on the other to so regulate the disposition of his own trust estate as to equalize for his children Pauline and Gould any loss of benefits which they might suffer by reason of their mother's favoring the daughter Edith, as ultimately proved to be the case. The settlor's widow, when she died on December 9, 1935, left a will whereby she bequeathed all her personal effects to Edith and directed that the entire residue of her estate be placed in trust for Edith to receive the income during her life, then to Edith's son, Robert Myers, for life, the sum of $25,000 to be paid to him out of principal upon his reaching the age of 35, remainder to his issue, with the further provision that if Robert died without issue surviving him, the principal of her trust estate should be divided into equal shares, one for the benefit of Pauline for life, with power of appointment by will, and the other on similar terms for Gould. Hence the mother left her whole estate

in trust for Edith, with contingent remainders over to Pauline and Gould in case Edith's son Robert died without leaving issue to survive him.

The settlor's will was dated the same day as that of the deed of trust, and merely bequeathed his personal effects to his wife and the residue of his estate to the trustees under the deed of trust for the uses and purposes thereof. In his will the settlor again stipulated that the advancements to his daughter Edith's husband, with interest, should be charged against her share pursuant to the terms of the deed of trust.

The trustees having filed their first account as trustees under the deed of trust, necessitated by the widow's death, the present dispute is between Edith, on the one hand, and the settlor's two remaining children as to the proper division of the corpus in setting up the trusts for the three children. The value of the trust at the date of the widow's death in 1935 was $371,954.62; the net value of the widow's estate, $99,325.92; and the amount of advancements made by the settlor to Edith's husband, with interest, was $11,854.82. The court below applied the settlor's formula for establishing the trusts as follows:

| | |
|---|---|
| Principal of Settlor's trust ............... | $371,954.62 |
| Determined value of widow's estate (since its actual value was less) .............. | 240,000.00 |
| Advancements to son-in-law .............. | 11,854.82 |
| Total value for purpose of apportioning trusts ............................. | $623,809.44 |
| One-third of same ...................... | $207,936.48 |
| Less amount which Pauline and Gould each "may be entitled to receive" under widow's will (one-half of widow's actual net estate, $99,325.92) .......................... | 49,662.96 |
| Amount of principal of settlor's trust to be set aside each for Pauline and Gould .... | $158,273.52 |

The amount directed to be set aside for *both* children is therefore $316,547.04, which deducted from the total corpus of the trust, $371,954.62, leaves a balance of $55,-407.58. This amount the court below directed the trustees to set up as the trust for Edith, awarding accrued income in like proportions and granting leave to Pauline and Gould to apply for a resettlement of the trusts whenever in the future Robert Myers should receive a payment out of principal or should die leaving issue in whom the widow's estate would immediately vest to the exclusion of Pauline and Gould.

The latter have appealed on the ground that they are entitled to receive nothing from their mother's estate under her will, that their interest is solely that of contingent remaindermen with only a remote possibility of taking, and that consequently there should have been no deduction from their one-third shares, which would result in the setting up for each of a maximum trust estate of $207,936.48; since the total value of the trust is only $371,954.62, this would mean that each would become the beneficiary of a trust of half that amount, $185,977.31, and nothing would be left of the settlor's estate to establish a trust for Edith, who would have only the trust under her mother's will, amounting to $99,325.92.

This contention was rejected by the court below, which correctly took the position that even if it is assumed that the expression in the deed of trust is lacking in clarity as to what was to be deducted from the one-third portions described above, any permissible interpretation is to be preferred which will preserve the equality of benefits among the settlor's three children: *Weber's Appeal*, 17 Pa. 474, 479; *Wooten's Est.*, 253 Pa. 136, 142, 97 A. 1066; *Webb's Est.*, 62 Pa. Superior Ct. 547, 549; see also *Nass's Est.*, 320 Pa. 380, 383, 182 A. 526; *Patterson's Appeal*, 128 Pa. 269, 280, 18 A. 430.

The expression used by the settlor is that the trustees should deduct from each of the two-thirds, calculated as

directed, the "amount" which each appellant, respectively, *"may be* entitled" to have held for his or her benefit or *"may be* entitled to receive" under their mother's will. It cannot be controverted that each appellant *may be* entitled to receive a very substantial "amount" under that will. This may be unlikely because their interest is contingent, but it is not impossible. A contingent remainder is an actual estate and has a possible if not readily determinable value; it is not a mere expectancy: *Robbins' Est.*, 199 Pa. 500, 49 A. 233; *DeHaas v. Bunn*, 2 Pa. 335. The term "may be" connotes possibility; it does not connote certainty. The inference is not unreasonable that if the settlor had meant to limit the deduction only to such an interest as appellants would take under their mother's will immediately on her death, or by a vested estate in remainder, which they would certainly take thereafter, he would have defined the "amount" of the deduction more specifically. To hold that the amount of the deduction is, in the case of each appellant, one-half the value of the mother's estate is a literal compliance with the phraseology employed.

It is true that in interpreting an instrument of testamentary disposition "the literal provisions may be departed from so as to carry out what appears to be a superior or preferred intent": *Disston's Est.*, 257 Pa. 537, 544, 101 A. 804; but here the primary intent of the settlor in ordering distribution was "that his children be treated fairly and equally in the disposition of his property." We are not at liberty to ignore the words he used merely because he might have used others if he could have divined the provisions of his widow's will. "The language employed had a well-recognized meaning; if he did not anticipate and provide for a contingency possibly arising in the ultimate distribution of his widow's estate, the court may not make another will for him": *Smith's Est.*, 314 Pa. 437, 441, 171 A. 587. "A court must interpret testamentary expressions according to

their plain language, and not seek to make them reflect its own view as to what might be more just in the light of circumstances unknown to the [settlor] and therefore not considered by him": *Hogg's Est.*, 329 Pa. 163, 169, 196 A. 503. Here the construction adopted by the court below works substantial equality. The trusts for Pauline and Gould each aggregate $158,273.52. That for Edith is $55,407.58, which, together with the trust for her benefit created by her mother's will, of $99,325.92, amounts to $154,733.50. If appellants' contention should prevail, the trusts for Pauline and Gould would be each almost double Edith's interest under her mother's will. "A construction which . . . works an invidious distinction between the heirs, is to be avoided where possible": *Edelman's Est.*, 276 Pa. 503, 508, 120 A. 457. "There is a presumption that the [settlor] intended equality of distribution among his beneficiaries": *Kenworthy's Est.*, 269 Pa. 315, 319, 112 A. 774. In *Hood's Estate*, 323 Pa. 253, 259, 186 A. 740, Mr. Justice SCHAFFER, speaking for this court, quoted with approval the following from *Grim's Appeal*, 89 Pa. 333, 334: "Where the meaning of a devise is uncertain, the law will adhere as closely as possible to the general rules of inheritance." In *Johnson v. Brasington*, 156 N. Y. 181, 185, 50 N. E. 859, the Court of Appeals of New York said: "When [a testator] has expressed himself in ambiguous or doubtful language, the law will impute to his words such a meaning as, under all the circumstances, will conform to his probable intention and be *most agreeable to reason and justice* [italics supplied]." The "pole star" long fixed for the guidance of courts in interpreting deeds of trust, as in interpreting wills, is the intention of the maker. As Chief Justice FULLER said in *Y. W. C. H. v. French*, 187 U. S. 401, "the intention of a testator expressed in his will, or clearly deducible therefrom, must prevail if consistent with the rules of law." The intention of a settlor of a deed of trust must likewise prevail if consistent with the rules of law. It is clear

that the testator had no intention of discriminating against any of his children.

It remains only to say that appellants' suggestion that the disputed deduction ought not in any event to exceed the present value of a remainder interest after two life estates (Edith's and her son Robert's), computed by actuarial methods, affords a solution no less unsatisfactory. This is not, under any theory, what appellants "may be entitled to receive" under their mother's will. The settlor did not specify the present value of a future estate, and his widow did not leave them a vested interest capable of calculation in this manner.

The decree of the court below is affirmed, costs to be paid out of the settlor's estate.