45 N.J. Super. 154 (1957)
131 A.2d 795
IN THE MATTER OF THE ESTATE OF FRANCIS S. PLEASONTON, DECEASED (TRUST FOR LILLIE BOWEN FUGUET).
Superior Court of New Jersey, Appellate Division.
Argued March 11, 1957.
Decided May 14, 1957.
*156 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Louis B. LeDuc argued the cause for appellant Eugene S. Pleasonton and for respondent Edith Bowen Baker.
Mr. John Claud Simon argued the cause for appellant Frederick H. Starling, executor of the estate of Frank Rodney Pleasonton, deceased.
Mr. Edward J. Inglesby argued the cause for appellants Eugenia P. Linderman, Helen P. Daniels and Frances Pleasonton.
Mr. Thomas N. Bantivoglio argued the cause for respondent Mary A. Hipple, executrix of the estate of Lillie Bowen Fuguet (Messrs. Archer, Greiner, Hunter & Read, attorneys).
Mr. William F. Hyland argued the cause for respondent The First Pennsylvania Bank and Trust Company.
The opinion of the court was delivered by CONFORD, J.A.D.
These are appeals by different parties having or claiming an interest in the estate of Francis S. Pleasonton, deceased, from a judgment of the Burlington County Court, Probate Division, construing his last will *157 and testament and directing the mode of distribution of a portion of it. The particular subject of controversy is the devolution of the one-fourth part of the original estate set over in trust under the will for the benefit during her lifetime of the testator's daughter, Lillie Bowen Fuguet, who died a widow, without surviving issue, July 12, 1955. This now amounts to some $230,000.
The decedent executed his will October 12, 1903 while a resident of Philadelphia, Pa. He died July 29, 1928, then a resident for some years of Burlington County in this state. It may be of some later significance to point out that the original will was written in script, from all appearances in the handwriting of the testator, but, from its style and content, apparently copied from a draft made by a lawyer. A photostatic copy of it was submitted to the court at the argument without objection. One of the witnesses to the will was a Pennsylvania lawyer. The will has only four apparent paragraphs, but as printed in the appendixes contains eight, exclusive of the execution and witnessing clauses. Since the opinion below and the discussions in the briefs deal with the will in terms of eight paragraphs we will do likewise to avoid confusion. In a number of instances the will as printed in the appeal papers capitalizes the words "in trust." The original will does not.
When the will was executed in 1903 the testator had four children, two daughters and two sons, who had then attained the following ages: Lillie Bowen Fuguet, 23; Frank Rodney Pleasonton, 19; Eugene Stephen Pleasonton, 15; Edith Clementine Pleasonton (later Edith Bowen Baker), 11. By the will testator directed the division of his estate into four equal parts, each of which he gave in trust for the benefit of a named child. The trusts for the daughters were identical. The net income (less 10% which was to be added to principal yearly) was to be paid to the daughter for life, free from debts, engagements or interference of any husband, and "from and immediately after the death of my said daughter" the principal was to go in trust to her children or to the issue of any child then dead *158 having left issue. The trusts for the sons were also identical. Out of the one-fourth part of the estate allocated to each, $20,000 was set aside in trust, the net income whereof was to be paid to the son for life, the principal of such sum then to go as provided by his will, or for want of a will to those entitled under the "intestate laws of Pennsylvania." The remaining portion of the one-fourth part was given in trust, the net income (less 10% which was to be added to the principal yearly) to be paid to the son until he attained the age of 30, and the entire principal to be then paid over to the son. In case of death of the son under the age of 30 leaving issue the principal was to go in trust to his children in equal shares.
The controversial part of the will is the seventh paragraph, which reads as follows:
"In case of the death of my said daughters, Lillie Bowen and Edith Clementine or either of them without leaving issue or the death of my sons, Frank Rodney and Eugene Stephen or either of them under the age of thirty years and without leaving issue, then in such case (Excepting the twenty thousand dollars given to each of my sons Frank Rodney and Eugene Stephen which has been provided for), I give, devise and bequeath the said part or share hereinbefore given, devised and bequeathed to such child so dying to my said Executor and the successor of it In Trust to hold the same for my surviving child or children in equal shares or portions in the same manner and for the same uses and purposes and under the trusts and limitations as are hereinbefore set forth concerning the parts or shares of my estate hereinbefore given, devised and bequeathed for the use and benefit of my said children respectively."
Upon the death of the testator in 1928 the will was probated by the Surrogate of Burlington County and the predecessor of the respondent, The First Pennsylvania Bank and Trust Company, which was named executor and trustee in the will, assumed the administration of the trusts. Since Frank and Eugene were then over 30, however, the shares of the estate appointed to go to them at that age under the will were distributed to them. On November 19, 1938 Frank died, having appointed by will those to take the $20,000 trust, and leaving a widow and three daughters, Eugenia P. Linderman, Helen P. Daniels and Frances *159 Pleasonton, who are appellants herein. As already noted, the death of Lillie Bowen Fuguet without issue on July 15, 1955 precipitated the application to the court for instructions as to distribution of the principal of the Fuguet trust, determination of which is contested on these appeals.
The County Court construed the reference in the seventh paragraph of the will to "my surviving child or children" as meaning those surviving at the time of Lillie's death, not at the time of the death of the testator, and consequently ruled against any right of Frank's estate or children to participate in the Fuguet trust share. This conclusion would have normally led to distribution in equal shares to the trust for Edith Bowen Baker, the other sister, and to Eugene, the surviving brother. But the court held further that Eugene was not entitled to share in the distribution because the gift over had been stipulated to be in trust for the same uses and purposes as the principal trust of the surviving child and that since the trust for Eugene had terminated when he became 30, long before Lillie's death, he was not one of those specified under the verbiage of the will to participate in a deceased sibling's share. No argument for this last conclusion of the trial court was advanced by any of the parties in the proceedings below. It is defended on this appeal only by the estate of Lillie Bowen Fuguet which will gain (as will Frank's estate) if that result stands and Edith dies without issue. Edith is now 65 and has no issue, portending an intestacy as to one-half the Francis Pleasonton estate if the judgment is affirmed. Although this disposition favors Edith she has joined with Eugene to ask the court to reverse this part of the judgment because she regards it to be contrary to the testator's intent.

I.
Concerning the dispute as to the operative time for determination of survivorship of those to take the share of testator's estate represented by the Fuguet trust there could *160 be no real contest if the will had been made in New Jersey by one then here resident. It has been repeatedly held in this state, consonant with the majority state rule and the modern English view, that where a life estate is given by will, remainder over at death of the life tenant to the "surviving children" of the testator, "surviving" denotes those who survive at the death of the life tenant, not those who survive the testator, unless the words are plainly used in the latter sense. Seddel v. Wills, 20 N.J.L. 223 (Sup. Ct. 1843); Stout v. Cook, 79 N.J. Eq. 573 (E. & A. 1911); In re Hosford's Estate, 26 N.J. Super. 412 (App. Div. 1953); Annotations 114 A.L.R. 4; 20 A.L.R.2d 830; see Restatement, Property, Future Interests, § 251. Application of the rule stated would eliminate the estate of Frank from participation in the Fuguet trust share, he not having survived Lillie, and there being nothing in this will plainly evidencing an intent contrary to the operation of the rule.
But it is earnestly argued by the executor of Frank's estate that since this will was made by a person then resident in Pennsylvania and presumably drafted by a lawyer cognizant of the judicial decisions of that commonwealth we ought to undertake the construction of this will on the basis of what they indicate as to the Pennsylvania law and that such an approach would require the conclusion that survivorship is to be decided as of the time of testator's death, not Lillie's.
Since the function of construction is the ascertainment of intent, a will, while for some purposes regarded as speaking from the time of death, is construed upon the basis of circumstances existing when it is made. In re Armour's Estate, 11 N.J. 257, 270 (1953). Consistently with this principle, the rules of construction which assist in determining the meaning of a will are taken from the law of the testator's domicile as that law existed at the time the will was made. 5 N.J. Practice, Clapp, Wills and Administration (1950), § 104, p. 238; Restatement, Conflict of Laws, sections 251, 308; 95 C.J.S. Wills § 587(a), *161 p. 718; see Ryder v. Myers, 113 N.J. Eq. 360, 365, 366 (Ch. 1933), affirmed on opinion below, 115 N.J. Eq. 169 (E. & A. 1934). It follows that since this will was executed by a testator resident in Pennsylvania we should look to the law of that commonwealth for assistance in construing the disposition in this will in favor of surviving children. That rule unquestionably was, as of 1903, as well as of today, that survivorship is to be determined as of the date of the death of the testator unless there is an indication of a contrary intention. In re Hood's Estate, 323 Pa. 253, 186 A. 740 (Sup. Ct. 1936); In re Nass' Estate, 320 Pa. 380, 182 A. 401, 114 A.L.R. 1 (Sup. Ct. 1936); In re Loving's Estate, 159 Pa. Super. 339, 48 A.2d 39 (Super. Ct. 1946); Appeal of Woelpper, 126 Pa. 562, 17 A. 870 (Sup. Ct. 1889).
But two considerations are significant in weighing the pertinence of the Pennsylvania rule in the present application. The first is that the rule, being one designed solely to aid construction, must be given no greater probative weight in the search for actual intent than it rationally deserves. Generally such weight will be correlative with the degree to which the verbiage to be construed is customarily used as or in the nature of a legal term of art, with the logical consequence that a lawyer-scrivener practiced in testamentary draftsmanship might be presumed familiar with it and likely to use it advisedly. In re Fisler's Estate, 133 N.J. Eq. 421, 425 (E. & A. 1943); cf. Wunderlich v. Bleyle, 96 N.J. Eq. 135, 138 (Ch. 1924). The modern tendency in the construction of wills to stress effectuation of actual testamentary intent, as contrasted with stabilization of the significance of legal language, Clapp, op. cit. supra, § 103, p. 236, conduces to comparatively light regard for a rigid rule of construction for such a testamentary provision as one in favor of the surviving children of a testator effective in enjoyment after an intervening life estate. The particular subject is one as to which draftsmen are more apt to use language with an eye towards its effectiveness in expressing their intent as a matter of English rather than in terms of legal technology. We think this was the case with the *162 will at hand and that if the scrivener actually intended these dispositions over to go to children surviving at the time of the testator's death, rather than at the termination of the life estate, and his thought adverted to the problem of clear expression of that intent, he would have set his mind to the use of words apt therefor as a matter of English rather than rely upon the so-called Pennsylvania rule of construction even if he was familiar with it.
In the second place, giving the Pennsylvania rule all the weight it purports to carry where applicable, its expressed qualification as to cases where there is indication of a contrary intent would require our rejection of the position of the executor of Frank's estate as we have no difficulty in finding such contrary intent in this will. The Pennsylvania courts have shown no reluctance in construing references to survivorship in particular cases as actually intended to refer to the date of termination of the intervening estate. In re Hood's Estate, supra; In re Loving's Estate, supra; Appeal of Woelpper, supra; In re Steinmetz's Estate, 194 Pa. 611, 45 A. 663 (Sup. Ct. 1900). In our own independent appraisal of the language of the seventh paragraph of the will the close collocation of the words "dying" and "surviving" in the provision, "I give," etc., "the said part or share hereinbefore given," etc., "to such child so dying to my said Executor and the successor of it In Trust to hold the same for my surviving child or children," etc., unmistakably declaims an identification of the intended "surviving children" as those surviving at the death of the child dying. Moreover, two of the Pennsylvania cases cited above, Woelpper and Steinmetz, hold that where, in a comparable situation, the share given to the life tenant goes to his issue, and to the "surviving" children only if the life tenant dies without leaving issue, the contingency of survivorship must be determined as of the death of the life tenant, "for then only can the contingency, on which alone they are to take, be determined," Steinmetz (45 A., at page 665). Here, too, the surviving children take only if the life tenant, Lillie, dies without issue, any surviving children of hers *163 having priority. It would be difficult to improve upon the exposition by the court in the Woelpper case, supra (17 A., at page 872), of the caution to be exercised in considering the application of this or any other canon of will construction:
"With the desire to reduce to a minimum the perplexity and uncertainty inseparable from the subject, courts have established certain more or less artificial and arbitrary canons of construction, by which certain forms of expression are presumed to have certain meanings, and in doubtful cases, these presumptions are held to be decisive. But all of these canons are subservient to the great rule as to intent, and are made to aid, not to override it. As in all such cases, care is required that tools shall not become fetters, and the real end shall not be sacrificed to what was intended only as the means of reaching it."
We thus conclude that application of the law of Pennsylvania to the matter at hand is far from compelling disagreement with this aspect of the ruling of the County Court; in fact it points toward concurrence in the determination.
The Frank Rodney Pleasonton Estate further supports its position by the argument that the testator intended absolute equality in the ultimate disposition of his estate not only in enjoyment by the first takers but also by their children if there were children. Cogent evidence of such intent as expressed in the language used, considered in the light of the attendant circumstances, In re Fox's Estate, 4 N.J. 587, 593 (1950), would have to be shown in order to induce our divagation from the plain course we have already found charted in the will for the devolution of the Fuguet share. There is no such evidence, only conjecture. When the will was made there were apparently no living issue of the children. This is not a case of cutting out descendants of the testator known when the will was made and natural objects of his bounty. Cf. Higgins v. Mispeth, 118 N.J. Eq. 575, 583 (Ch. 1935), cited by appellants. The draftsman of this will had issue of testator's children in mind when he drew it but expressed his concern with them only to the extent of providing that they should take the share of a *164 parent (at death in the case of a daughter of testator; at death under the age of 30 in the case of a son), not to the extent of nominating them to stand in the shoes of a deceased parent as to gifts in remainder of the shares of the other children of testator. It is not unreasonable to suppose the testator actually intended the remainder interests to go exclusively to his surviving children, the known natural objects of his bounty, rather than to the then unknown next of kin or testamentary beneficiaries of a child who might predecease a child whose share was limited over.
Lastly it is stressed that the construction complained of may lead to partial intestacy  that is, if Edith outlives Eugene, as to one-half of the estate  as Edith will probably die without issue and in such case there would be no one qualified to take her share, increased by the addition of Lillie's. While the law favors construction which avoids intestacy, as presumably contrary to testamentary intent, Torrey v. Torrey, 70 N.J.L. 672 (E. & A. 1904), there is no canon demanding avoidance of a clearly expressed disposition not inconsistent with the over-all plan of the testament because intestacy, not necessarily actually foreseen, and not inevitable, could conceivably result. The rule applies only where there is genuine doubt as to the intended meaning. Clapp, op. cit. supra, § 115, p. 276.
So much of the adjudication under appeal as restricts the takers of the Fuguet trust share to the children of the testator alive at the death of Lillie is affirmed.

II.
We turn to consider the determination that Eugene was not to share in the Fuguet trust share because his own trust had already terminated. It has already been noted that this concept was the court's own, not the product of a contention to that effect by any party. We consider it an erroneous construction of the testator's design.
The trial court's impulsion to conclude that a trust for a surviving child must be in operation in order to qualify *165 him or her to participate in the lapsed share of a deceased child is not supported by any express statement to that effect in the seventh paragraph. And the implication of such a qualifying condition is totally discordant with the general over-all plan that the surviving children should share equally in the lapsed shares of deceased children. There is not a single piece of evidence to sustain the notion that the testator intended or would have intended that Eugene not share with Edith in the limitation over of the Fuguet share. It seems obvious to us that the emphasized language giving the lapsed share to the executor in trust to hold for the surviving children in the manner, for the same uses and purposes and under the trusts and limitations set forth in respect to each primary share for a child, was intended to require that if a trust was still in existence in respect to a primary share for a surviving child at the time that a share of another child should lapse, the trusteeship should extend to the property by which the primary share was increased through participation in the share limited over, not that there should be no participation if the trust for the primary share had then terminated, as here in the case of Eugene because he was past 30 when Lillie died. In other words, in the language which attracted the eye of the trial court the testator was concerned only with the manner of administration of property limited over, not with fixing the qualifications for a taker.
The intention of the testator must be determined by considering the scheme of the will as a whole and not by narrow concern with isolated words or phrases taken out of the context of the entirety of the will. Pilgrim v. Vandemark, 135 N.J. Eq. 469 (E. & A. 1944); Creech v. McVaugh, 140 N.J. Eq. 272, 279 (Ch. 1947). The case at hand illustrates the sense in the aphorism of Judge Learned Hand that: "There is no surer way to misread any document than to read it literally * * *," Guiseppi v. Walling, 144 F.2d 608, 624, 155 A.L.R. 761 (2 Cir. 1944), affirmed 324 U.S. 244, 65 S.Ct. 605, 89 L.Ed. 921 (1945).
*166 Insofar as the judgment under appeal construes the will to exclude Eugene from participation in the share of Lillie, and, upon Edith's death without issue prior to his death, in the share of Edith, it is modified to set aside that adjudication. Eugene participates in the Fuguet trust share to the extent of one half, and, if he survives Edith, she dying without issue, he takes Edith's share in entirety as the sole surviving child of the testator.

III.
The three daughters of the late Frank Rodney Pleasonton, separately represented on this appeal, took a position in their brief which we understood them to abandon at the argument; i.e., that the will failed to dispose of the corpus of the Fuguet trust in the event Lillie died without issue and that it must be treated as property in respect to which the decedent died intestate. In view of the abandonment there is no present occasion to elaborate the reasons for our opinion that the argument was devoid of merit.
In lieu of that position it was contended by these appellants for the first time at the argument that the will should be read as giving them a one-third, joint participation in the Fuguet share by purchase, directly under the testator's will, not through their father and under his will. There being no objection by any of the parties to the lateness and lack of notice of the contention, we consider it.
The argument is that the seventh paragraph should be read with the first four paragraphs; that each of the latter shows an intent that the testator's benefaction should pass to the children of his children; and that this intent should be deemed applicable to limitations over under the seventh clause. While the court is not hidebound by the testator's literal expressions, as noted above, neither can it ignore plain language consistent with the over-all testamentary plan. We have already expressed our view that the testator made plain in his will what the issue of his children should have and when they should have it. We conclude there is *167 no basis in either the language or the general design of the will for a participation by Frank's children in the Fuguet trust share.
In their brief these appellants also took exception to the construction of the will at this time on the ground that the account of the trustee has not yet been settled and that exceptions thereto are on file undetermined. This position was, however, also withdrawn at the argument.
The judgment is modified and the cause remanded further to be proceeded with conformably with this opinion.