## Horton Estate

*Irving W. Coleman* and *Harry A. Kitey*, for accountants.

*Jacob S. Kolb*, guardian ad litem.

WOODRING, J., August 26, 1963.—This case is before the court on exceptions to accountants' proposed schedule of distribution. Accountants contend that the will gives the residue of the estate, in fee, to testator's granddaughter, Sandy Horton Eichler. Exceptant, guardian for testator's great-grandchild, Beth Ann Eichler, and possible unborn great-grandchildren, argues that the granddaughter received only a life estate, and that the remainder is vested in the great-grandchild, subject to being opened to let in other members of the class.

Decedent, William A. Horton, died testate August 12, 1960, domiciled in Upper Mt. Bethel Township, Northampton County, Pa., and survived, insofar as these proceedings are concerned, by Helen Horton, the widow of testator's son, and her daughter, Sandy Horton Eichler. The will, written in longhand by decedent, is difficult to decipher by reason of decedent's penmanship, spelling, abbreviations, sentence structure, etc. Hearing was held and testimony taken of the witnesses, including Clyde Bishoff, an admitted handwriting expert. From the testimony taken and our independent consideration of the will, we find that it reads as follows:

"*Last Will of Wm. A. Horton Johnsville Aug* 24, 1959 [1]

1. "1000.00 one Thousand dollars to be put in *Trust* [2] in Merchants Nat Bank Bangor *Int* to be Paid to Mt. Bethel Presbyterian Church Cemetery annually for the up Keep of the Horton Plot. Providing the Grass is cut Every week during Mowing season. and Trimmed

2. "500.00 Five hundred dollars to the Mt. Bethel

---

[1] Numbering of the paragraphs has been supplied as a means of reference.

[2] Italics ours, throughout.

Presbyterian Church. to be used for up Keep of the Church

3. "500.00 dollars Five hundred dollars to the Johnsonville Lutheran and Reformed Church for the up Keep of the Church

4. "500.00 Five Hundred dollars to Portland Lodge F. and A M. Portland to be used for up Keep of the Lodge

5. "1000.00 One Thousand dollars to Dona Reed daughter of mr and mrs Frank Reed for her Education after she Graduates from High school to be put in *trust* until that time.

6. "If my House Keeper Mrs Katharine R Gardner needs Help after my death to be Paid out of my Estate. to any Reasonable amount

7. "If my daughter in-law Helen I Horton needs any help after my death Same is to be Paid out of My Estate Balance of Estate to be put in *trust* Inst to go to Sandy Horton Eichler

8. "If she Leaves children *Int* to go for their Education.

9. "Principal to go to them when they are 21 yrs old If more than one share and share alike

10. "If Sandy Horton Eichler dies before my daughter in law Helen I Horton, and there are no Grt Gand children she shall receive the *Intis.*

11. "If Sandy Horton Eichler and Helen I Horton Both Died and there are no Grt Gand children the Balance of the Estate is to go to the Good Shepards Home of Allentown.

"Helen I Horton and Sandy Horton Eichler shall be the Exeux. With out Bond

"Wm A Horton

"Aug 24, 1959"

From the use of the word "trust" and the manner in which testator used that word in paragraphs 1, 5 and 7 of the will, it appears, at least prima facie, that tes-

tator was familiar with the term and some of the legal significance thereof. Likewise, from his use of the word "interest" as it appears in paragraphs 1, 7, 8 and 10, testator employed that word where he intended to say "income". It is to be noted that testator's writing of the word "interest" in these four paragraphs employs three different spellings. Paragraphs 1 and 8 uses the abbreviation "Int". In paragraph 7 he spells it "Inst", and in paragraph 10 the spelling is "Intis". From the penmanship strokes, the formation of the letters and the context of the several paragraphs, we have no doubt that testator intended the word "interest" in each case. Accountants contend otherwise. They argue that the word in question in paragraph 7 is not "interest" but rather that it is "Just". As thus deciphered they contend that the second paragraph in our 7 devises the fee of the residue to Sandy Horton Eichler.

In our opinion, the unnumbered paragraph in no. 7, and paragraphs 8, 9, 10 and 11, clearly manifest testator's desire to place the residue of his estate in trust for the use of Sandy Horton Eichler for life and the remainder to her child or children. If Sandy Horton Eichler dies leaving minor children, the income is to be used for their education, and the principal is to be paid to them as they become 21 years of age. If Sandy dies before her mother, the latter shall receive not the residue of the estate, but the interest therefrom. If or when both Sandy and her mother have died, and there are no great-grandchildren, the remainder is to go to the Good Shepherd Home. It is difficult for us to contemplate a more complete plan for the disposition of the residue of an estate.

The "polestar" in interpreting deeds of trust, as in interpreting wills, is the intention of the maker.[3] All of grantor's words in a trust instrument must be con-

---

[3] Hirsh Trust Estate, 334 Pa. 172; Scholler Trust, 403 Pa. 97, 169 A. 2d 554.

sidered in the search for his intention and they are to be given their natural effect.[4] By those standards, testator's will expresses a complete and carefully considered disposition of his property. The provisions of testator's will, especially paragraphs 7 through 11, contain all of the elements of a trust.

Some of the necessary elements are: (1) a trust res,[5] an interest in particular, identified property; (2) the separation of the legal and beneficial title or interest;[6] (3) there must be a beneficiary who acquires the equitable or beneficial interest in the subject matter;[7] (4) the beneficiary must be named or ascertainable with reasonable certainty;[8] (5) the purpose for which the trust is created must not be capricious;[9] (6) a trust relationship imposes an equitable duty upon the trustee to deal with the subject matter in accordance with the stated trust purposes;[10] (7) in every trust there must be a "trustee",[11] but it is not essential to the validity of a trust that a trustee be named by the settlor.[12]

All of the foregoing elements for the creation and existence of a valid, active trust are expressed in the words of testator's will. We have no alternative, therefore, but to sustain the exceptions.

## DECREE NISI

And now, May 13, 1963, it is hereby adjudged,

---

[4] Riverside Trust Company v. Twitchell, 342 Pa. 558, 20 A. 2d 768.

[5] Sum. Pa. Jur. Trusts and Inter vivos Gifts, §7; Restatement, Trusts 2d, §74.

[6] Restatement, Trusts 2d, §2, Comment (f); Love v. Clayton, 287 Pa. 205.

[7] Sum. Pa. Jur. Trusts and Inter vivos Gifts, §25.

[8] Restatement, Trusts 2d, §112; Myers v. Harris, 6 D. & C. 2d 155.

[9] Restatement, Trusts 2d, §124, Comment (g).

[10] Myers v. Harris, supra.

[11] Sum. Pa. Jur. Trusts and Inter vivos Gifts, §23.

[12] Toner's Estate, 260 Pa. 49; Kern's Estate, 296 Pa. 348.

ordered and decreed that the exceptions heretofore filed to the proposed schedule of distribution be, and the same are, sustained and accountants are directed to file an amended schedule of proposed distribution in accordance with the foregoing opinion.

It is further adjudged that by the provisions of testator's will, Sandy Horton Eichler is entitled to the income from the trust during her lifetime. Beth Ann Eichler holds a vested remainder, which estate is subject to being opened to let in possible hereafter born of the class.

It is further ordered and decreed that Helen I. Horton and Sandy Horton Eichler be, and the same are, hereby designated as the trustees under the last will and testament of William A. Horton.

The clerk of the orphans' court is directed to enter the foregoing decree as a decree nisi, and if no exceptions are filed within 20 days from this date, to enter a final decree.